Mary MARTIN, Administratrix of the
Estate of Bruce Martin

v.

LUMBERMEN'S MUTUAL CASUALTY
COMPANY.

No. 87–490–Appeal.

Supreme Court of Rhode Island.

April 17, 1989.

Neil P. Philbin, Cranston, for plaintiff.

Kevin C. Glavin, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This appeal concerns a petition for declaratory judgment filed by Mary Martin (Mary) to determine the liability of Lumbermen's Mutual Casualty Company (Lumbermen's) to the estate of Bruce Martin (Bruce). The parties submitted an agreed statement of facts, the pertinent portions of which follow.

On March 28, 1985, Bruce received fatal injuries when a vehicle in which he was a passenger struck a tree in Warren, Rhode Island. The driver of the automobile as well as its owner were uninsured Rhode Island residents. Bruce had been a resident of Swansea, Massachusetts, where he had lived with his mother, Mary, and his sister Darlene. On the relevant date both Mary and Darlene had effective automobile insurance policies written by Lumbermen's. Each policy provided uninsured-motorist coverage with limits of $10,000 per person and $20,000 per accident. Pursuant to this coverage, Lumbermen's agreed to compensate the insured or any member of his or her household for physical injuries or death legally caused by an uninsured or hit-and-run motorist.

Lumbermen's conceded liability under both policies and offered Bruce's estate $20,000, the sum of the $10,000 policy limits of Mary's and Darlene's individual uninsured-motorist coverage. However, Mary, as administratrix of Bruce's estate, declined the offer. Instead, she filed a declaratory-judgment petition in Superior Court to litigate whether General Notice G–642 (G–642) of the Massachusetts Automobile Rating and Accident Prevention Bureau was made applicable by Rhode Island law. This notice, which was issued on June 27, 1973, and made part of all Massachusetts automobile-insurance policies, provides substantially that

"[i]f, under the provisions of the motor vehicle financial responsibility law or the motor vehicle compulsory insurance law or any similar law of any state or province, a nonresident is required to maintain insurance with respect to the operation or use of a motor vehicle in such state or province and such insurance requirements are greater than the insurance provided by the policy, the limits of the company's liability and the kinds of coverage afforded by the policy shall be as set forth in such law, in lieu of the insurance otherwise provided by the policy, but only to the extent required by such law and only with respect to the operation or use of a motor vehicle in such state or province."

The trial justice decided that G–642 was triggered by Rhode Island law, thereby automatically raising Mary's and Darlene's uninsured-motorist policy limit from $10,000 to $25,000 each. Apparently the rationale for this decision was G.L.1956 (1979 Reenactment) § 27–7–2.1, as amended by P.L.1981, ch. 251, § 2, which required that all automobile-liability insurance policies delivered or issued for delivery in Rhode Island, with respect to vehicles registered as principally garaged in the state, offer the insured uninsured-motorist coverage with limits no less than that set forth in G.L.1956 (1982 Reenactment) § 31–31–7. We find this decision to be erroneous.

The trial justice placed great reliance on the holding of *Amick v. Liberty Mutual Insurance Co.*, 455 A.2d 793 (R.I.1983). *Amick* involved a Rhode Island resident injured in an automobile collision negligently caused by an insured Massachusetts resident. Liberty Mutual offered Amick the tortfeasor's policy limit of $10,000, but he insisted that an extraterritorial clause in

the policy, similar to G–642, raised the limit to $25,000. Amick argued that the provisions of Rhode Island's Motor Vehicle Safety Responsibility Act[1] triggered the extraterritorial clause, causing the policy-limit increase. We agreed with Amick, sustained his appeal, and ordered that judgment be entered in his favor in the amount of $25,000. *Id.* at 796.

This decision was reached after considering the interrelationship of many of the provisions of the Motor Vehicle Safety Responsibility Act. Section 31–31–4 "requires any driver or vehicle owner to post security upon the occurrence of an accident if there is bodily injury or property damage" in excess of $200. *Amick,* 455 A.2d at 795. One exception to this security-posting requirement is contained in § 31–31–6(1), which provides that an individual is exempt from the security-posting provisions if at the time of the collision he or she had in effect an automobile-liability policy with respect to the vehicle involved in the collision. However, this exception is qualified by § 31–31–7, which provides that an insurance policy will only have exemptive qualities if it contains liability limits of at least $25,000 per person and $50,000 per episode. Finally, § 31–31–9 allows the registry to suspend the driving privileges of any individual failing to post the security required by § 31–31–5(a).

After reviewing these statutes, we concluded that although "it is true that Rhode Island does not require compulsory liability insurance as a condition precedent to the operation of motor vehicles on public highways," these statutes "include a mandatory minimum amount of liability insurance for those who undertake to insure their automobile." *Amick,* 455 A.2d at 795. An important consideration in reaching this conclusion was that if the extraterritorial clause in the tortfeasor's policy was not

triggered, he would be forced to post security in accordance with § 31–31–5(a) or risk having his Rhode Island driving privileges suspended. Since we concluded that liability insurance with certain minimum limits is required in Rhode Island, the extraterritorial language of the tortfeasor's policy was applicable.

 However, *Amick* is easily distinguishable from the current controversy and affords no support for the trial justice's decision. General Notice G–642 only becomes operative when nonresidents of a state are required by that state's compulsory-insurance, financial-responsibility, or other similar law to maintain insurance of certain limits as a condition of operating a vehicle within that state. In *Amick* we interpreted various provisions of the Motor Vehicle Safety Responsibility Act to require liability insurance, with certain minimum limits, for those resident and nonresident motorists who have the wherewithal to purchase such insurance. However, we see nothing in the Motor Vehicle Safety Responsibility Act which would lead us to conclude that nonresident motorists are required to maintain uninsured-motorist protection as a condition to their driving on Rhode Island's highways.

 First, § 27–7–2.1, upon which Mary relies to trigger G–642, has been amended on several occasions since Bruce's death. On March 28, 1985, § 27–7–2.1 merely provided that no automobile liability insurance policy "shall be delivered or issued for delivery with respect to any motor vehicle registered or principally garaged in this state" unless uninsured-motorist coverage is provided therein in limits as set forth in § 31–31–7. However, the statute was clear that the insured possessed the ability to reject this offered coverage in whole or in part.[2] It is apparent that at the time the

---

1. The act includes all sections of G.L.1956 (1982 Reenactment) chapters 31 to 33 of title 31. *See* § 31–33–18.

2. General Laws 1956 (1979 Reenactment) § 27–7–2.1 was amended in 1985 by P.L.1985, ch. 288, § 1. The section now requires that all liability policies delivered or issued for delivery in Rhode Island with respect to any motor ve-

hicle registered or principally garaged in Rhode Island provide a statutory minimum amount of uninsured-motorist protection against personal injury. The insured, however, retains the ability to reject the portion of uninsured-motorist protection concerning property damage.

Lumbermen's policies were issued, uninsured-motorist insurance was not required of either insured or uninsured Rhode Island motorists. Therefore, we fail to see how Mary can argue that § 27-7-2.1 required uninsured-motorist insurance of nonresident motorists, thereby triggering G-642.

Second, the primary rationale of *Amick* was that the extraterritorial clause of the tortfeasor's policy must have been triggered by Rhode Island law because if it were not, the insured would be forced to either post security as required by § 31-31-5 or risk having his Rhode Island driving privileges suspended pursuant to § 31-31-9. We held that this could not have been the position the insured had bargained for when he purchased insurance, so the extraterritorial clause was applicable. However, this rationale is not relevant to the instant controversy. No provision of the Motor Vehicle Safety Responsibility Act provides for the suspension of the driving privileges of an individual without uninsured-motorist insurance. The act in no way requires nonresident motorists to possess uninsured-motorist insurance.

 Finally, it should be noted that § 27-7-2.1, upon which Mary relies to trigger G-642, only speaks of policies "delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state * * *." The statute does not address itself to policies delivered and issued for delivery outside Rhode Island. Also, the statute is not applicable to policies covering automobiles registered and principally garaged outside Rhode Island. Since the Lumbermen's policies were issued and delivered in Massachusetts and the insured vehicles were registered and garaged in Massachusetts, § 27-7-2.1 is inapplicable to the controversy.

Consequently, for the reasons stated, it is this court's belief that the trial justice erred in ruling that G-642 was triggered by Rhode Island law, thereby increasing the coverage on the respective policies from $10,000 to $25,000.

The sole remaining issue is whether Lumbermen's must pay prejudgment interest according to G.L.1956 (1985 Reenactment) § 9-21-10. Statutes that award prejudgment interest generally serve the dual purposes of encouraging the early settlement of claims, *Pray v. Narragansett Improvement Co.*, 434 A.2d 923, 930 (R.I.1981), and compensating plaintiffs for waiting for recompense to which they were legally entitled, *Dennis v. Rhode Island Hosp. Trust Nat'l Bank*, 744 F.2d 893, 901 (1st Cir.1984). The award of interest in this case would promote neither of the purposes of § 9-21-10. Lumbermen's, soon after Bruce's death, made a bona fide effort to settle the claim by offering his estate the $10,000 uninsured-motorist limit of Mary's and Darlene's policies. Also, although the estate has been delayed in the receipt of the insurance proceeds, the delay was caused entirely by the litigation Mary commenced. In a situation such as this the awarding of prejudgment interest would be inappropriate.

Lumbermen's appeal is sustained. The judgment below is vacated. The case is remanded to the Superior Court for entry of judgment in accordance with this opinion.