**COMMERCIAL ASSOCIATES**
and Lechmere, Inc.

v.

**TILCON GAMMINO, INC.**

Civ. A. No. 86–0748–T.

United States District Court,
D. Rhode Island.

Sept. 21, 1992.

940

Richard W. Petrocelli, Girard R. Visconti, David M. Campbell, Visconti & Petrocelli, Ltd., Providence, R.I., Marie C. Vaccarelli, Robert D. Kozol, Friedman & Atherton, Boston, Mass., for Commercial Associates.

Michael DiBiase, William R. Landry, Blish & Cavanagh, Richard W. Petrocelli, Girard R. Visconti, David M. Campbell, Visconti & Petrocelli, Ltd., Providence, R.I., for Lechmere, Inc.

Louis V. Jackvony, Jackvony & Jackvony, Lincoln, R.I., John R. Fornaciari, Robert M. Disch, Ross & Hardies, Washington, D.C., for Tilcon Gammino, Inc.

Vincent A. Indeglia, Providence, R.I., for Thomas Prendergast.

Guido R. Salvadore, Higgins, Cavanagh & Cooney, Providence, R.I., for Stephen J. Watchmaker, Neil Zais.

Salvatore M. Giorlandino, Bernkopf, Goodman & Baseman, Boston, Mass., for Gerald Fineberg, Gerald Felman.

## MEMORANDUM AND ORDER

TORRES, District Judge.

Tilcon Gammino Inc. has moved, pursuant to Federal Rule of Civil Procedure 59(e), to amend a judgment awarding it damages on its counterclaim. Specifically, it asks the Court to add prejudgment interest referable to amounts it previously recovered pursuant to a partial settlement and through a proceeding under the Rhode Island Mechanics' Lien statute, R.I.Gen. Laws §§ 34–28–1 to 34–28–36 (1984 Reenactment), between the time its right to those amounts accrued and the date on which payment was actually received. For reasons hereinafter stated, the Court grants the motion with respect to the mechanics' lien amount but denies it with respect to the partial settlement amount.

### FACTS

Commercial Associates ("Commercial") is a general partnership that developed a shopping center known as the "Bald Hill Plaza" on property it owned in Warwick, Rhode Island. In February, 1985, Commercial hired Tilcon Gammino, Inc. ("Tilcon") to do the site work required for construction of the retail stores that were to occupy the shopping center.

The contract between Tilcon and Commercial described certain work (the "contract work") for which Tilcon was to be paid a maximum of $3,095,000.00. In addition, the parties agreed that Tilcon was to be compensated on a "cost plus" basis (i.e., the cost of labor and materials plus a reasonable profit) for "extra" work not specified in the contract.

As the project progressed, Tilcon submitted periodic bills for the contract work. Those bills were in the form of "Pay Estimates" itemizing the work done and the amounts due. The first six Pay Estimates, referable to contract work performed between February, 1985, and August 4, 1985, were paid in full; but Commercial refused to pay for the balance of the contract work reflected in Pay Estimate Nos. 7–9 covering the period from August 5, 1985, through October, 1985. Commercial also refused to pay for any of the "extras" claimed by Tilcon. Tilcon responded by asserting a lien against the shopping center property pursuant to the Rhode Island Mechanics' Lien Statute, R.I.Gen.Laws §§ 34–28–1 to 34–28–37 (1984 Reenactment). On February 7, 1986, Tilcon filed a petition in the Rhode Island Superior Court to enforce its mechanics' lien.

Under Rhode Island law, such a petition contemplates notice to the property owner and other lienholders; a hearing to determine the validity, amount and priority of the claim; and, if necessary, a judicially ordered sale of the property to satisfy the claim. R.I.Gen.Laws §§ 34–28–10 to 34–

28–21. However, the statute limits the amount of the lien to the value of the work performed during the 120 day period immediately preceding the date on which notice of intent to claim it is first given (the "lien period"). Thus, in Tilcon's case, the lien was enforceable only with respect to work done after August 18, 1985, and did not apply to contract work performed during the first portion of the period covered by Pay Estimate No. 7 (i.e., between August 5 and August 18, 1985) or to "extra" work performed prior to August 18, 1985.

Commercial participated in the Superior Court action and vigorously contested Tilcon's effort to enforce a mechanics' lien. While that action was pending, Commercial obtained an order releasing the property from Tilcon's claimed lien by providing substitute security in the form of a $1,200,-000.00 surety bond that was deposited in the registry of the court.

On May 6, 1988, a Superior Court judge entered judgment for Tilcon in "the sum of $1,329,207.03, with interest thereon at the rate of 12% as provided by law." *Tilcon Gammino, Inc. v. Commercial Assocs.*, No. KM 86–121 (Sup.Ct. May 6, 1988) (amended judgment). That judgment represented the amount that the Court determined was owed for all work done during the lien period including that portion of the work shown on Pay Estimate No. 7 that was performed *after* August 18. The Superior Court did not adjudicate Tilcon's claim for contract work shown in Pay Estimate No. 7 that was performed *before* August 18 or for "extra" work performed before that date because such work was outside that lien period.

Commercial appealed the judgment, but its appeal was rejected by the Rhode Island Supreme Court. *Tilcon Gammino, Inc. v. Commercial Assocs.*, 570 A.2d 1102 (R.I. 1990). Consequently, on April 16, 1990, the Superior Court clerk issued an execution in the amount of $1,991,135.24 (the principal amount of the judgment plus 12% annual interest from October, 1985) and the Court ordered that the $1,200,000.00 bond be applied "in part satisfaction of [the execution]." *Tilcon Gammino, Inc.*, No. KM 86–121 (Sup.Ct. April 19, 1990) (order releasing and assigning surety bond to Tilcon).

Approximately one month later, the original execution was recalled and a new execution was issued in the amount of $1,200,-000.00 to be satisfied solely from the bond. The explanation given was that "this is an In Rem action. Therefore, the Execution cannot be used against the land or the respondent, individually." *Tilcon Gammino, Inc.*, No. KM 86–121 (Sup.Ct. May 23, 1990) (order amending order of April 19, 1990). However, the underlying judgment was not amended.

Tilcon was unable to collect the $1,200,-000.00 from the surety bond until January 24, 1991. On April 8, 1991, it also received $300,000.00 pursuant to a settlement agreement with Gerald Fineberg, one of Commercial Associates' partners, which counsel agreed should be applied to reduce any judgment in favor of Tilcon. (Tr. 2/3/92 at 6.)

In the meantime, Commercial brought this suit seeking money damages for what it alleged was Tilcon's breach of contract and fraud, and Tilcon responded with a counterclaim for the balance it asserted was due for the work it had performed. This Court narrowed the issues to be resolved at trial by determining that the parties were bound by and collaterally estopped from relitigating the factual findings made in the mechanics' lien action (i.e., that Tilcon was entitled to $1,329,207.03 for both contract work and extra work performed during the lien period). *Commercial Assocs. v. Tilcon Gammino, Inc.*, No. 86–0748 (D.R.I. Dec. 19, 1991) (order partially granting Tilcon's motion for summary judgment). During the trial, the issues were further narrowed when the parties stipulated that Tilcon was entitled to an additional $132,196.20 for contract work shown on Pay Estimate No. 7 that was performed before the lien period. The jury resolved the only remaining issue by returning a verdict for Tilcon and fixing the amount it was owed for "extra" work done before the lien period at $307,500.00.

Based on the foregoing, this Court directed the clerk to enter judgment in favor of Tilcon in the amount of $268,903.23 plus interest and costs. The amount of the judgment was calculated by, first, totalling the amount owed for extra work performed before the lien period (i.e., $307,500.00); the balance owed for contract work performed before the lien period (i.e., $132,196.20) and the balance owed for all work performed during the lien period (i.e., $1,329,207.03 minus the $1,200,000.00 collected under the bond); and, then subtracting the Fineberg settlement payment (i.e., $300,000.00).

Tilcon now moves, pursuant to Federal Rule of Civil Procedure 59(e), to amend the judgment "to include prejudgment interest on all monies owed to Tilcon as required by R.I.G.L. § 9–21–10." In essence, it asks the Court to add interest for the period between October, 1985, (i.e., the date work was completed) and January 24, 1991, (i.e., the date on which the $1,200,000.00 bond payment was received) based on the entire balance outstanding during that period (i.e., $1,768,903.23) rather than the net amount owed after deduction of the bond payment and the Fineberg settlement payment (i.e., $268,903.23).

## DISCUSSION

### I. *The Rule 59(e) Standard*

Federal Rule of Civil Procedure 59(e) expressly recognizes a court's authority to alter or amend its judgments. In exercising that authority, courts have broad discretion to correct errors and see that justice is done. *White v. New Hampshire Dept. of Empl. Sec.*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) (*quoting* Notes of Advisory Committee on 1946 Amendment to Rules, 5 F.R.D. 433, 476 (1946)); *Earnhardt v. Commonwealth of Puerto Rico*, 744 F.2d 1 (1st Cir.1984). The principal limitation on that discretion is that a motion to amend "may not be granted where to do so would undermine the jury's fact-finding role and trample on the defendant's Seventh Amendment right to a jury trial." *Robinson v. Watts Detective Agency, Inc.*, 685 F.2d 729, 742 (1st Cir.

1982), *cert. denied, Consolidated Service Corp. v. Robinson*, 459 U.S. 1105, 103 S.Ct. 728, 74 L.Ed.2d 953 (1983).

Specifically, Rule 59(e) has been invoked to correct damage awards that were improperly calculated, *Lubecki v. Omega Logging, Inc.*, 674 F.Supp. 501 (W.D.Pa. 1987), *aff'd*, 865 F.2d 251 (3d Cir.1988), and to include prejudgment interest to which a party was entitled. *See* 11 Wright and Miller, *Federal Practice and Procedure*, § 2817 n. 28–29.

In this case, Tilcon's motion does not implicate any factual determination made by the jury. Rather, it deals solely with the method to be used in calculating the amount of the judgment and prejudgment interest. Those calculations involve matters of law and are based on undisputed facts. Therefore, they are appropriate for resolution by way of a Rule 59(e) motion.

### II. *The Prejudgment Interest Statute*

In a diversity case, prejudgment interest is governed by applicable state law. *Roy v. Star Chopper Co., Inc.*, 584 F.2d 1124, 1135 (1st Cir.1978), *cert. denied*, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979). Rhode Island's prejudgment interest statute provides:

> **9–21–10. Interest in civil actions.—** In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages, interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued which shall be included in the judgment entered therein.

R.I.Gen.Laws § 9–21–10 (Supp.1991). Although prejudgment interest becomes a part of the judgment, it is not a component of damages. *DiMeo v. Philbin*, 502 A.2d 825, 826 (R.I.1986).

The Rhode Island Supreme Court has sometimes referred to the calculation of prejudgment interest as a ministerial or peremptory act to be performed by the clerk rather than the court. *DiMeo*, 502

A.2d at 826; *Kastal v. Hickory House, Inc.*, 95 R.I. 366, 187 A.2d 262, 264 (1963). However, it also has recognized that the court has discretion to determine the extent to which interest should be awarded in any particular case. *See Martin v. Lumberman's Mutual Casualty Co.*, 559 A.2d 1028, 1031 (R.I.1989); *Grady v. Grady*, 504 A.2d 444, 448 (R.I.1986); *Bader v. Alpine Ski Shop, Inc.*, 505 A.2d 1162, 1169 (R.I. 1986); *Holmes v. Bateson*, 583 F.2d 542 (1st Cir.1978). More specifically, it has held that, in making that determination, a court should consider "the dual purposes of encouraging the early settlement of claims and compensating plaintiffs for waiting for recompense to which they were legally entitled." *Martin*, 559 A.2d at 1031 (citations omitted). Furthermore, it is clear that the amount of the award on which interest is to be computed and the date on which the claimant's cause of action accrued are matters of law to be decided by the Court.

In short, R.I.Gen.Laws § 9–21–10 requires the clerk to include prejudgment interest in every civil judgment as a matter of course. However, it does not abrogate the court's discretion to determine whether or to what extent a prevailing claimant may be entitled to prejudgment interest.

## III. *Tilcon's Damages*

Determination of the amount of Tilcon's "pecuniary damages" must begin with a calculation of the balance due Tilcon in October, 1985, when it completed its work at Bald Hill Plaza. As already noted, that amount was $1,768,903.23. Thus, if Tilcon had not received any partial payments, it would be entitled to judgment for the entire amount plus prejudgment interest from October, 1985. However, Tilcon did recover $1,200,000.00 on January 24, 1991, in connection with the mechanics' lien action and an additional $300,000.00 on April 8, 1991, pursuant to its settlement with Fineberg. Therefore, the Court must determine how those payments affect the amount that now should be awarded to Tilcon.

## A. *Effect of the Mechanics' Lien Proceeding*

At first blush, it might appear that under the doctrine of res judicata, Tilcon's claim for the amount attributable to work done during the lien period and for prejudgment interest on that amount have merged into and are barred by the judgment it obtained in the mechanics' lien proceeding. *See Restatement (Second) of Judgments* § 18 (1980). However, there are two reasons why res judicata does not preclude that claim. First, the rationale underlying the merger and bar rules is that one should not be permitted to relitigate, against the same party, a claim on which the claimant already has obtained or had an opportunity to obtain all of the relief to which he was entitled. Under Rhode Island law, a petition to enforce a mechanics' lien is an *in rem* action. *Hunt v. Darling*, 26 R.I. 480, 59 A. 398 (1904). The property owner is not a "party" to such a proceeding, and the claimant's remedies are limited to the property itself. Indeed, in this case, those remedies were inadequate because the value of the bond posted to release the property from Tilcon's lien was insufficient to satisfy Tilcon's claim for work done during the lien period. For those reasons, a judgment in an *in rem* action is conclusive between the participants with respect to issues actually litigated by them but does not bar a subsequent *in personam* action on the same claim. *Restatement (Second) of Judgments* § 32(3) (1980).

An even more compelling reason for not applying the merger and bar rules in this case is that the mechanics' lien statute expressly preserves a claimant's right to pursue all other available remedies including *in personam* claims. Thus, the statute provides:

> **34–28–33. Remedy of chapter not exclusive.**—Except as otherwise specified, nothing in this chapter shall be construed to limit the right of any person, whether he have a valid lien hereunder or not, to remedies otherwise available to him under law; and the rights, if any, of any person who has filed his account and demand or claim ... against any other

person (rather than against the property which is the subject matter of any petition under this chapter) shall not be impaired by the provisions of this chapter. R.I.Gen.Laws § 34-28-33 (1984 Reenactment). The Rhode Island Supreme Court has specifically recognized that this provision permits a subcontractor to bring a petition to enforce a mechanics' lien and, later, sue the property owner to recover any unpaid balance. *Tilcon Gammino v. Commercial Assocs.*, 570 A.2d 1102, 1107 (R.I.1990) ("a mechanics' lien [may] be sought for materials furnished during the 120-day lien period and then a suit on the contract [might] also be brought for the balance due.").

 In short, the judgment in the mechanics' lien proceeding does not bar Tilcon's claim for work done during the lien period, but, the Superior Court's determination that the amount owed to Tilcon for that work was $1,329,207.03 is conclusive and binding on the parties in this case under the doctrine of collateral estoppel. Therefore, the sole issue presented is how the $1,200,000.00 actually collected pursuant to the mechanics' lien action should be applied to reduce the judgment and prejudgment interest to which Tilcon is entitled in this case.

B. *Effect of Bond Recovery*

Commercial contends that the judgment in this case should not include any prejudgment interest on $1,200,000.00 of the $1,329,207.03 that was owed to Tilcon for work performed during the lien period. It argues that the $1,200,000.00 is not part of Tilcon's damages because Tilcon recovered that amount from Commercial's surety in the mechanics' lien proceeding.

Among other things, that argument overlooks the fact that the April 16, 1990, Superior Court judgment was for $1,991,135.24 and included prejudgment interest on the entire $1,329,207.03. That judgment was affirmed by the Rhode Island Supreme Court, and the fact that an execution was issued for only $1,200,000.00 does not alter the Superior Court's determination that Tilcon was entitled to prejudgment interest on

the full amount, at least until the date that judgment was entered. Commercial is collaterally estopped from now contesting that determination. Consequently, the judgment in this case should, at a minimum, include interest on the full amount of $1,329,207.03 from October, 1985, to April 16, 1990.

However, the period for which Tilcon is entitled to prejudgment interest extends beyond the date of the Superior Court judgment. Tilcon did not receive payment from Commercial's surety until January 24, 1991, and, therefore, was deprived of the use of its money until then.

 At least one court has recognized that a party that recovers a portion of an amount owed before judgment is entered is entitled to prejudgment interest on the entire amount from the date it became due until the partial payment was received and on the remainder from that time until the date of judgment. *Fluor Corp. v. United States*, 405 F.2d 823, 830 (9th Cir.), *cert. denied*, 394 U.S. 1014, 89 S.Ct. 1632, 23 L.Ed.2d 40 (1969). Applying that principle in this case serves both the interests of justice and the policies underlying R.I.Gen. Laws § 9-21-10. The dual purposes of that statute are to make a successful claimant whole by compensating it for the time value of the money to which it was entitled during the period for which payment was delayed and to encourage early settlement of claims. *Martin*, 559 A.2d at 1031.

Failure to award Tilcon prejudgment interest on the $1,200,000.00 owed from October, 1985, to January 24, 1991, would frustrate both of those objectives. It would deprive Tilcon of any compensation for the loss of use of that money for more than five years. Furthermore, it would confer an undeserved windfall on Commercial by allowing it to profit from its actions in delaying payment thereby discouraging rather than encouraging early settlement of claims.

C. *Effect of Partial Settlement Payment*

The parties agree that the $300,000.00 payment by Fineberg in settlement of the claims against him should be deducted

from Tilcon's award. However, once again, they disagree as to whether Tilcon is entitled to prejudgment interest on that amount until the time it was paid.

■ In resolving the issue, the Court must bear in mind the differences in the nature of the recovery in the mechanics' lien proceeding and the Fineberg settlement payment. The $1,200,000.00 received from Commercial's surety represented a partial satisfaction of Tilcon's claim against *all* joint obligors (i.e., all of Commercial Associates' partners) that reduced their liability *pro tanto*. Thus, all of the partners are properly responsible for their proportionate shares of the interest on that sum. On the other hand, the $300,000.00 paid by Fineberg discharged him from any further liability to Tilcon, but left the remaining partners liable for the balance of Tilcon's claim.[1] Thus, it would be inequitable to require the remaining partners to pay interest on what Tilcon agreed was Fineberg's share of the liability.

In *Margadonna v. Otis Elevator Co.*, 542 A.2d 232, 235–36 (R.I.1988), the Rhode Island Supreme Court addressed this identical issue in the context of a settlement payment made by one joint *tortfeasor*. The Court noted that under Rhode Island's Uniform Contribution Among Joint Tortfeasors Act (i.e., R.I.Gen.Laws § 10–6–7 (1985 Reenactment)), a settlement payment by one joint tortfeasor reduces the "claim" against the other tortfeasors by the amount paid or by the amount or proportion provided in the release, whichever is greater. It proceeded to hold that such an amount must be deducted from the verdict *before* the addition of prejudgment interest so that the non-settling tortfeasors would not be forced to pay interest on the amount of a settlement in which they did not participate. *Margadonna*, 542 A.2d at 235–36. It is true that the joint liability in this case is based on contract rather than tort. However, the principle expressed in *Margadonna* appears to be· equally applicable.

Of course, Tilcon and Commercial could have agreed to a different method of crediting the settlement payment. In fact, during the trial, when counsel informed the Court of the settlement payment, the Court inquired what effect they intended it to have on any judgment that might be obtained. Unfortunately, at the time that inquiry was made, the Court did not anticipate and counsel did not address the specific question of prejudgment interest. Therefore, the colloquy on the subject was ambiguous at best.

MR. JACKVONY: ... We have a stipulation order, consent order that's been drafted by Mr. Kozol and myself that we would like to present to the Court to eliminate Mr. Fineberg.

. . . . .

THE COURT: ... I see that it calls for a payment of three hundred thousand dollars by Mr. Fineberg to Tilcon Gammino....

. . . . .

THE COURT: ... what will that do to any judgment that Tilcon Gammino may obtain in this case?

. . . . .

MR. KOZOL: Judge, this is what I believe it means. Whatever judgment Tilcon Gammino obtains, in my opinion, would have to be reduced by the three hundred thousand dollars. Then if the individual partners sought to sue Mr. Fineberg for contribution, then that would be a separate lawsuit by and between the partners and Mr. Fineberg and they would have to sort these things out then, who owes what percentage.

. . . . .

THE COURT: From Tilcon Gammino's point of view, Mr. Jackvony, I suppose was the only thing that I can see that would be of concern to them is the amount of the judgment that they might

---

1. Under the terms of the settlement agreement between Tilcon and Fineberg, Tilcon agreed to dismiss its claim against Fineberg with prejudice and covenanted not to sue him on any cause of action arising out of its work at the Bald Hill Plaza. However, Tilcon expressly reserved its right to proceed against Commercial Associates and its remaining partners. Settlement Agreement ¶ 3(a).

obtain in this case. And I take it you're acknowledging that any judgment, any verdict returned by the Jury, ought to be reduced by three hundred thousand dollars to reflect the settlement payment by Mr. Fineberg, is that right?

MR. JACKVONY: That is correct, Your Honor.

· · · · ·

THE COURT: So everyone is agreed that the judgment would be reduced by three hundred thousand dollars?

MR. JACKVONY: Yes, Your Honor.
MR. KOZOL: Yes.

(Tr. 2/3/92 at 2–6.)

Because of the interchangeable use of the terms "judgment" and "verdict" and the fact that the issue of prejudgment interest was not specifically addressed, that discussion falls far short of anything that could be characterized as an agreement to apply the Fineberg payment in a way different from that prescribed in *Margadonna.* Consequently, the Court concludes that Tilcon is not entitled to recover prejudgment interest from the remaining defendants on the $300,000.00 settlement payment received from Fineberg.

### CONCLUSION

For all of the foregoing reasons, the Court finds that the prejudgment interest to which Tilcon is entitled includes interest on the $1,200,000.00 that remained unpaid from October, 1985, until January 24, 1991, but does not include any interest on the $300,000.00 settlement payment received from Fineberg. Accordingly, based upon that finding and upon orders previously entered with respect to various motions made by the parties, the Court hereby directs the clerk to enter an amended judgment as follows:

Judgment for Tilcon Gammino, Inc. with respect to all claims asserted in the complaint by Commercial Associates and Lechmere, Inc.

Judgment for Lechmere, Inc. denying and dismissing all claims against it contained in the counterclaim of Tilcon Gammino, Inc.

Judgment for Tilcon Gammino, Inc. on Count 1 of its counterclaim against Commercial Associates for breach of contract in the amount of $268,903.23 plus interest from October 31, 1985, plus additional interest on the $1,200,000.00 recovered in the mechanics' lien proceeding from October 31, 1985 to January 24, 1991, plus costs.

Judgment for Commercial Associates denying and dismissing the remaining claims contained in Tilcon Gammino, Inc.'s counterclaim.

IT IS SO ORDERED.