[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court pursuant to Rhode Island General Laws § 9-21-10
(2004) is Defendant Lincoln Benefit Life Company's motion to preclude prejudgment interest. The Plaintiffs, Paul A DeCesare, et al. (DeCesare or Plaintiffs), filed a timely objection thereto.
 Facts and Travel
The underlying facts of this case are recited in DeCesare v. LincolnBenefit Life Co., 852 A.2d 474 (RI 2004), DeCesare v. Lincoln BenefitLife Co., 2002 WL 31867873 (Dec. 12, 2002) (Silverstein, J.), andDeCesare v. Lincoln Benefit Life Co., 2002 WL 658168 (Apr. 3, 2002) (Silverstein, J.). Lincoln Benefit Life Company (Lincoln) is an insurance company with its principal place of business in Lincoln, Nebraska. Between January 1, 1996 and December 31, 1997, Lincoln sold a Saver's Index Annuity (SIA or the annuity), to members of the plaintiff class. The SIA is an investment vehicle that provides a monthly payment to policyholders based on the accumulated value of the initial investment.
The SIA accumulates value based on the performance of the Standard 
Poor's Composite Stock Price Index (S P Index). Each year, Lincoln applies a percentage of the S P Index, called the Index Participation Rate (Rate), and a limit or cap to the annuity's accumulated value. The annuity grows tax free until it vests or is otherwise liquidated. For example, in this case, Lincoln set the Rate for the Plaintiffs' policy at 80 percent. If the S P Index increased by 10 percent during the preceding year, the policies would be credited with an 8 percent increase, derived by multiplying the Rate (80 percent) by the 10 percent growth rate of the S P Index (80 percent × 10 percent = 8 percent).
Under the policy, Lincoln reserved the right to determine the Rate to be applied each year, but it had to "declare" what it was. In February 1998, Lincoln sent its policy holders an annual report that listed the Rate at 80 percent and the cap at 14 percent. In March, it sent an amended annual report that listed the Rate at 70 percent and the cap at 12 percent, but did not reference or otherwise draw the annuitants' attention to the reduced Rate. Furthermore, contrary to prior practice, Lincoln did not send the amended report to the insurance agents who sold the policies. DeCesare was alerted to the discrepancy through the diligence of his agent, who then attempted to obtain the Rate that Lincoln "declared" in its first annual report. Lincoln refused, stating that the Rate quoted in the first annual report was incorrect due to a clerical error and that Lincoln "declared" the proper Rate via an internal email. The Supreme Court, after a de novo review of the legal meaning of "declare," summarily held that Lincoln's internal email did not satisfy its obligation to declare the Rate and that it breached its contract when it attempted to change the Rate by sending an amended annual report.
After summarily deciding Lincoln's liability, the Supreme Court examined whether the Plaintiffs could proceed as a class action. In its opinion, the Supreme Court upheld this Court's finding that the Plaintiffs had met the requirements of Rule 23(a) and 23(b)(2). The determination that the action could be maintained as a class action under Rule 23(b)(2) was based on the fact that equitable relief, as opposed to monetary compensation, was the primary relief sought. To this end, the Supreme Court painstakingly demonstrated that more than pecuniary relief was necessary to make the plaintiffs whole:
 "Moreover, injunctive relief requiring Lincoln to credit retroactively each class member's annuity the prorated difference between the value of annuity if the 80 percent rate and 14 percent cap had been properly applied, and the value of the annuity with the reduced rate and cap, as opposed to compensatory damages, is entirely appropriate. Although plaintiffs' damages may be measured in terms of money, because the SIA is a multiyear contractual relationship, a guarantee that Lincoln will perform under the agreement is the real relief the class is seeking." DeCesare, 852 A.2d at 489-90.
Now that its liability has been established, Lincoln objects to the addition of prejudgment interest to the damage award. The Plaintiffs in turn believe that prejudgment interest is justified. Under normal circumstances, ruling on this motion would be a routine matter. However, it is complicated by the fact that the Supreme Court's ruling was based upon or did not contemplate a factual landscape that has significantly changed since the complaint was filed in 1999. The Supreme Court's discussion with respect to certification of the class under Rule 23(b)(2) did not explicitly or implicitly consider the fact that two-thirds of the class members have surrendered their annuity, the contract in dispute.[1]
Since the complaint prayed for injunctive relief consisting of re-crediting the policy holders' accounts, which now no longer exist, the primary issue is how to effectuate a practical and fair award under the current circumstances.
 Analysis
By statute, prevailing litigants in any civil action for money damages may receive both prejudgment and post-judgment interest once judgment is entered in their favor. R.I. Gen. Laws § 9-21-10 (a) (2004).[2] For the most part, awarding of prejudgment interest is a ministerial act of the clerk of the court and not an issue that must be decided by the court.Cardi Corp. v. State, 561 A.2d 384, 387 (R.I. 1989). However, there are two important caveats. The first is an explicit exception within the statute itself that excludes awarding prejudgment interest in cases where a contractual obligation already provides interest. R.I. Gen. Laws §9-21-10(a). The second is case law that establishes that although prejudgment interest may be included in every civil judgment as a matter of course, "it does not abrogate the court's discretion to determine whether or to what extent a prevailing claimant may be entitled to prejudgment interest." Commercial Associates. v. Tilcon Gammino, Inc.,801 F. Supp. 939, 943 (D.R.I. 1992).
Here, Lincoln advances two arguments in favor of precluding prejudgment interest. First, it argues that this case falls under the exception to the statute because the SIA provides interest to the claimants. Second, it argues that due to the fact that the Plaintiffs were certified as an injunctive class, it is not proper to award prejudgment interest. Both arguments will be discussed in turn.
Lincoln asserts that the SIA contract affords the Plaintiffs interest terms by which the money placed in their individual annuity accounts would grow based on market performance. It likens the present litigation to other cases decided in Rhode Island wherein the court declined to award prejudgment interest because measures of interest, other than statutory prejudgment interest, were contemplated. Ultimately, Lincoln contends that awarding prejudgment interest to Plaintiffs who continue to hold annuities would constitute a double recovery. Not only would they be made whole by crediting and adjusting their annuities to reflect the rate as stated in the first annual report, they would receive prejudgment interest too.
The Plaintiffs counter that the SIA does not provide interest. The SIA is an investment vehicle that has the potential to appreciate in value over time based on the performance of the stock market. The potential to gain appreciation on one's investment is not interest as contemplated by the prejudgment interest statute. The Plaintiffs point out that Lincoln itself never used the word interest in the context of this litigation until now. Prior to this motion, Lincoln referred to the annual appreciation in value as an Index Increase, not interest. Likewise, when referring to the rate at which the SIA appreciates in value, Lincoln used the term Index Participation Rate. The Index Participation Rate is distinguishable from interest because it fluctuates based on the performance of the stock market and it is declared each year by Lincoln.Cf Cabral v. DuPont, 764 A.2d 114, 116 (R.I. 2001) (holding that the prejudgment interest statute does not apply where the funds at issue were deposited in an interest-bearing account). Addressing Lincoln's argument that to award prejudgment interest would allow the Plaintiffs to double-dip, the Plaintiffs point out that since the SIA earned a zero percent rate of return for three out of the last six years, the Plaintiffs would not receive a windfall if prejudgment interest were awarded. In DeCesare's words, "the class members never got to `dip' the first time."
Turning to the primary purpose of the prejudgment interest statute, the Plaintiffs argue that to deny prejudgment interest would reward Lincoln for not settling the case. The legislative intent behind the statute was not to add interest, but "to establish a device to encourage settlement of cases." DiMeo v. Philbin, 502 A.2d 825, 826 (R.I. 1986). In this case, Lincoln has engaged in extensive and aggressive litigation. While this is its right, in the meantime, Lincoln has retained and used interest-free, the money that is legally due to the Plaintiffs. It is to deter this type of conduct that the legislature enacted the prejudgment interest statute. Murphy v. United Steelworkers of America, 507 A.2d 1342,1346 (R.I. 1986) (noting that "the statute serves two purposes: it promotes early settlements, and more importantly, it compensates persons for the loss of use of money that was rightfully theirs").
The Plaintiff's argument is persuasive. The SIA does not provide for interest as contemplated by the prejudgment interest statute. Unlike the cases relied upon by Lincoln, the SIA does not provide for interest payments to the Plaintiffs in the traditional sense. In Cabral, the Supreme Court reversed a Superior Court's award of prejudgment interest where the money in controversy was placed in an interest-bearing account. Cabral, 764 A.2d at 116. Not surprisingly, the Supreme Court held that the plaintiffs, upon judgment in their favor, could not collect statutory interest, as well as the actual interest earned on the money.Id. Likewise, by way of example, in Cardoso v. Mendes, 1999 WL 329726, at *1 (R.I. Super. 1999) (Gibney, J.), prejudgment interest was denied because 17 percent interest was provided for in a promissory note. These cases illustrate that typically, interest serves to compensate a party for the use or detention of his or her money. This is not the case here. The SIA itself does not mention the word interest at any point, and the contract does not operate to compensate the Plaintiffs for the use or detention of their money. Rather, the SIA is an investment vehicle which may or may not appreciate, depending on the market. Lincoln cannot cite to any cases that equate interest with a rate of return on an investment. Furthermore, it would be inequitable to allow Lincoln to benefit from the uncompensated use and detention of the Plaintiffs' money, in what amounts to a five-year interest free loan. See Murphy,507 A.2d at 1346. For these reasons, the SIA does not fall under the contract exception to § 9-21-10(a) but rather is squarely within its provisions. See Skaling v. Aetna Ins. Co., 742 A.2d 282, 292 (R.I. 1999) (holding that where the defendant's breach forced the plaintiff to resort to litigation to enforce his rights under an uninsured motorist policy, the damage award was squarely within § 9-21-10 and the judgment was subject to the addition of prejudgment interest).
Lincoln's second argument concerns the relationship between certification under Rule 23(b)(2) and § 9-21-10(a). The Plaintiff class was certified under Rule 23(b)(2) because the Supreme Court was persuaded that injunctive relief was the primary remedy to be afforded to the plaintiffs. This seems to preclude the awarding of prejudgment interest because § 9-21-10(a) only applies to civil actions for pecuniary damages. This is a matter of first impression about which this Court invited additional briefing. Neither party filed additional briefs.
For legal support of its argument that the statutory prejudgment interest is antithetical to the policies behind Rule 23(b)(2), Lincoln points to Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998). Lincoln relies on this case for the proposition that "at least one federal court has denied class certification pursuant to the federal counterpart of Rule 23(b)(2), partially because one aspect of the relief sought was prejudgment interest." If this were the case, it would present a host of new and novel issues. Primarily, it would call into question the extent to which the Supreme Court's class certification defines and limits the parameters of this litigation including the available remedies. However, confrontation of these issues is not necessary for two reasons. First, the Allison case does not hold that prayer for prejudgment interest precludes class certification under Rule 23(b)(2). Second, awarding prejudgment interest is not contrary to the policies underlying certification of an injunctive class because prejudgment interest is procedural and administrative in nature.
The case relied upon by Lincoln is an employment discrimination case from the Fifth Circuit. In this case, the plaintiffs' prayer for relief included both monetary and equitable relief. Allison, 151 F.3d at 407. The affirmative injunctive relief sought consisted of the restructuring of offending policies, instatement into existing jobs and retroactive seniority and benefits. Back pay, front pay, prejudgment interest, compensatory damages, and punitive damages constituted the monetary relief. Id. The District Court found and the Circuit Court affirmed that certification under Rule 23(b)(2) was inappropriate because money damages were the predominant form of relief sought. Furthermore, monetary damages were not merely incidental to the injunctive relief because the damages were highly individual in nature and would require significant individual proof. Id. at 408. Next the District Court found, and the Circuit Court affirmed, that class certification was not appropriate under Rule 23(b)(3) because individual issues predominated over common ones and a class action would not be a superior method for fair and efficient adjudication of the controversy. Id. Nowhere in its decision does the Fifth Circuit state that a request for prejudgment interest disqualified the class under Rule 23(b)(3). In mentioning the prayer for prejudgment interest, the Court was merely listing the relief sought in order to demonstrate that monetary damages, of which prejudgment interest was a part, predominated over injunctive relief. In sum, Allison lends little help to the present controversy. Lincoln did not present any other authority for the proposition that granting prejudgment interest would be antithetical to class certification under Rule 23(b)(2).
Essentially, Lincoln's argument mischaracterizes the purpose and function of Rule 23(b)(2) in an attempt to remove this case from the ambit of the prejudgment interest statute. Class certification under Rule 23(b)(2) does not preclude money damages upon which interest may be added. See Jones v. Diamond, 519 F.2d 1090 (5th Cir. 1975) (holding that a class may be certified under Federal Rule 23(b)(2) when money damages are requested, so long as the predominant purpose of the suit is for injunctive relief); Soc'y for Individual Rights, Inc. v. Hampton,528 F.2d 905 (9th Cir. 1975) (holding the same); Guardians Ass'n. of NewYork City Police Dept., Inc. v. Civil Service Com., 431 F. Supp. 526
(N.Y. 1977) (holding the same). In fact, the rule has nothing to do with damages at all; it merely delineates one of the circumstances under which a case may proceed as a class action. In order to certify a class, the representative plaintiff must establish numerosity, commonality, typicality, and the ability to fairly and adequately protect the interests of the class. Super. R. Civ. P. Rules 23 (a). After proving that the class meets these four prerequisites, the representative must also prove that the action is maintainable as a class action. Super. R. Civ. P. Rules 23 (b). There are four types of litigation wherein a class action may be maintained, one of which is where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief . . . with respect to the whole." Id. Courts have interpreted this to mean that the appropriate final relief must not relate exclusively or predominantly to money damages." DeCesare, 852 A.2d at 489.
The purpose of the maintainability rule under Rule 23(b)(2) is to ensure that class actions are used to redress group injuries rather than individual wrongs. Id. at 488. "In balancing the competing interests underlying the class action device, Rule 23(b)(2)'s predomination requirement serves two basic purposes: first, it protects the legitimate interests of potential class members who might wish to pursue their monetary claims individually; and, second, it preserves the legal system's interest in judicial economy." Allison, 151 F.3d at 415. In other words, Rule 23(b)(2) does not operate to limit the Court's power to fashion a monetary remedy.
Because the primary relief sought in this case was specific performance, the Supreme Court ruled that a class action could be maintained. DeCesare, 852 A.2d at 490. However, due to the financial nature of the dispute, monetary damages will make up part of the overall remedy. Because the final decision will be made for pecuniary damages, the prejudgment interest statute applies. This result is consistent with the policies underlying both Rule 23(b)(2) and R.I. Gen. Laws § 9-21-10
(a).
Although there is no law on point that has been brought to this Court's attention, the fact that a purpose of prejudgment interest is equitable, leads to the common sense conclusion that it is not antithetical to certification of an injunctive class. Prejudgment interest is procedural and ministerial in nature. See R.I. Charities Trust v. Engelhard Corp.,267 F.3d 3, 8 (1st Cir. 2001) (holding that under Rhode Island choice of law rules, prejudgment interest should be governed by Rhode Island law because it is procedural rather than substantive in nature); DiMeo,502 A.2d at 825 (prejudgment interest is ministerial in nature). It encourages settlement and reimburses the plaintiff for the loss of use of their money. Although it becomes part of the judgment, it is not a component of damages. Id. at 826. Because prejudgment interest is an equitable mechanism of the Court and not considered damages, it is not antithetical to classification of an injunctive class. In fact, it is complimentary to it.
 Conclusion
In light of the foregoing considerations, Lincoln's motion to preclude prejudgment interest is denied. As mentioned above, a primary challenge in this case is to fashion a remedy that fairly compensates the Plaintiffs, taking into consideration the fact that many of the Plaintiffs have surrendered their policies. Therefore, consistent with the Supreme Court's decision, the following damages calculations will be applied. For the group of Plaintiffs who still have an SIA with Lincoln, their accounts shall be retroactively credited for the prorated difference between the value of annuity if the 80 percent Rate and 14 percent cap had been properly applied and the value of the annuity with the reduced Rate and cap. DeCesare, 852 A.2d at 489. To this amount, prejudgment interest at the rate of 12 percent is to be calculated. The interest will be paid in cash rather than applied to their annuity.
For the Plaintiffs who have surrendered their policy, only monetary relief is available. The Plaintiffs will receive a cash payment equal to the difference between the value of their policy when they surrendered it and the surrender value of the policy if the proper Rate and cap had been applied. To this amount, 12 percent prejudgment interest will be added. Counsel shall submit an appropriate order consistent with this decision.
[1] Neither court was made aware of the fact that the policies had been surrendered.
[2] Although Nebraska law governs the substantive claims of the parties, because prejudgment interest is procedural in nature, the Rhode Island prejudgment statute applies. See Klaxon v. Stentor Elec. Mfg.Co., 313 U.S. 487, 496 (1941); R.I. Charities Trust v. Engelhard Corp.,267 F.3d 3, 8 (2001).