386 A.2d 1100.

BARBARA B. KERNEY *v*. BRUCE E. KERNEY.

MAY 25, 1978.

PRESENT: Bevilacqua, C.J., Kelleher, Doris and Weisberger, JJ.

DORIS, J.   This is an appeal from a judgment entered by a justice of the Superior Court confirming the report of a special master denying the claim of the plaintiff Barbara B. Kerney (Barbara) for payment by the defendant Bruce E. Kerney (Bruce) of his proportionate share of expenses paid by Barbara.

The parties were married on June 21, 1941, and separated in November of 1967 when Bruce left the marital domicile in Portsmouth, Rhode Island. The parties were divorced in the state of Florida on September 28, 1971, after Bruce had established residence there. Barbara was the sole owner of the Portsmouth Insurance Agency, which she acquired from her mother in 1956. Bruce served as manager of the agency from 1944 to January 28, 1969, fourteen months after their marital separation.

On December 18, 1972, Barbara initiated this action, seeking to recover Bruce's contributive share of taxes, insurance, repairs and maintenance paid by Barbara for the upkeep of the property owned jointly by the parties. In addition, Barbara's complaint sought a contributive share for payments made by her on two promissory notes. These notes, executed by both Bruce and Barbara, were held by the Rhode Island Hospital Trust Company in the amount of $6,642, and the Newport National Bank, in the amount of $10,314.37. Bruce counterclaimed for $35,000 seeking payment for commissions owed him by the Portsmouth Insurance Agency.

The cause was heard by a justice of the Superior Court who referred it to a special master. Following five days of hearings, the special master issued his report without benefit of the transcript of the proceedings, the procedure agreed upon by the parties. The special master found that Barbara had paid off the notes in full and had also paid the taxes and

repairs on the jointly owned property. However, he further found that Barbara solely enjoyed the profits of the agency after Bruce left and also had the exclusive use of the homestead from 1967. With respect to the counterclaim, the special master found that Bruce had received no commissions after 1967, but that any amount due him was speculative. He further found that during the marriage each party had paid bills for the benefit of the other without reimbursement.

The report concluded with a recommendation that jointly owned real estate and securities be sold and the proceeds divided evenly between the parties.

Over Barbara's objection, a justice of the Superior court confirmed the findings of the special master. The trial justice found the report to be amply supported by the evidence presented to him.

The standards of review in this case are well-defined. The trial justice is required to accept the findings of fact of the master unless those findings are clearly erroneous. *See* Super. R. Civ. P. 53(e)(2). In reviewing the subsequent findings of the Superior Court, we must follow the same criterion. We shall accept the findings of the trial justice unless we are convinced by Barbara that those findings are clearly wrong. *Petition of Statter*, 108 R.I. 326, 335, 275 A.2d 272, 276 (1971).

The first argument raised by Barbara on appeal is that the trial justice erred in denying her repayment from Bruce for one-half of the amounts she paid to satisfy the two delinquent joint notes. Barbara asserts that both the notes were signed jointly and that on several occasions each party paid an equal amount of interest due on the notes. Despite the fact that the money borrowed went into the account of the Portsmouth Insurance Agency, Barbara argues that funds were continually used from the business account by both parties to satisfy personal debts.

The trial justice found the evidence to be clear and convincing that the proceeds of these promissory notes were used for business purposes. He further found that Barbara was the sole owner of the agency and that she considered the notes to be business obligations because she included the interest paid on the notes in her 1968 federal income tax return for the Portsmouth Insurance Agency. Based upon these facts, the trial justice concluded that Barbara was the real maker of the notes and that Bruce, at most, was merely an accommodation party.

As both the special master and the trial justice noted, there was a lack of evidence presented in this case on the key issues despite five days of testimony. However, the facts as found by the trial justice are clearly supported by the evidence in the record.

That Barbara was the sole owner of the insurance agency at the time these notes were signed is beyond dispute. Bruce, as manager, received only a salary plus commissions as compensation for his services.

The Rhode Island Hospital Trust note was a renewal of a note originally dated June 15, 1960. The original note had apparantly been renewed several times, the final occasion being August 21, 1969, in the amount of $6,642 plus interest. Barbara was unable to testify as to the exact disposition of the proceeds of this note except to state in general terms that the funds went for the joint benefit of the parties. Bruce, however, testified that the note was used strictly for business purposes.

The Newport National Bank note was signed jointly by the parties on October 8, 1969, in the amount of $10,314.37. Bruce testified that the proceeds of this note were used to pay company balances of the Portsmouth Insurance Agency.

Evidence was presented that on several occasions each party paid fifty percent of the interest due on these notes. Testimony was also offered that the parties, from time to

time during their marriage, paid personal bills from Barbara's business account. However, from the evidence presented we cannot say that the finding of the trial justice that the proceeds of the promissory notes were used for business purposes is clearly erroneous.

As the Portsmouth Insurance Agency was the beneficiary of the proceeds of the notes, we uphold the conclusion of the trial justice that under the circumstances to require Bruce to compensate Barbara for one-half of the payments on the notes would be inequitable. The decision of the trial justice that Bruce was an accommodation party is supported by the evidence presented to the special master.

"An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it." General Laws 1956 (1969 Reenactment) §6A-3-415(1). He is a surety only and is not liable to the party accommodated. General Laws 1956 (1969 Reenactment) §6A-3-415(5).

The most significant element in determining whether a party to a note is an accommodation party is the intention of the parties. When there is no intention expressed, the purpose of the note becomes the significant element, and "[w]here a person receives no direct benefit from the execution of the paper, it is likely that he will be regarded as an accommodation party * * * ." 2 Anderson, *Uniform Commercial Code* §3-415-9 (2d ed. 1971). *See Riegler* v. *Riegler*, 244 Ark. 483, 486, 426 S.W. 2d 789, 791 (1968).

Bruce testified that both notes were used for business purposes, and this testimony was accepted by the trial justice. This evidence is clearly sufficient to establish that Barbara's business was the beneficiary of the proceeds of the notes. Therefore, Bruce met his burden of demonstrating that he received no benefit from the proceeds. 2 Anderson, *Uniform Commercial Code* §3-415:11 (2d ed. 1971). *See Riegler* v. *Riegler, supra.* Barbara therefore is not entitled to

contribution for one-half of the amounts she paid on the two promissory notes.

The second argument advanced on appeal is that Barbara is entitled to contribution for the expenses she has paid to maintain the jointly owned property.

The evidence supports the conclusion that Barbarba has in fact paid all bills relating to the property since November of 1967 when Bruce left the residence. However, Barabara has also enjoyed the exclusive use of the property since that time. Furthermore, there is evidence in the record that Bruce expended large sums of money for the renovation of the marital residence when the property was initially given to the Kerneys.

"The doctrine of equitable contribution is applied to prevent one of two, or more, joint obligors being required to pay more than his share of a common burden, or to prevent one obligor from being unjustly benefited or enriched at the expense of another." *Lopez* v. *Lopez*, 90 So. 2d 456, 458 (Fla. 1956). However, "[i]f the tenant who has paid taxes or interest has been in sole possession of the property, and the value of the use and enjoyment which he has had equals or exceeds such payments, no action in any form for contribution will lie against the others." 2 *American Law of Property* §6.17 at 76 (1952); *see also* 20 Am. Jur. 2d *Cotenancy and Joint Ownership* §59 at 150. This is also the law with respect to payment by one tenant of the costs of repairs to the premises. 2 *American Law of Property* §6.18 (1952).

The record clearly indicates that Barbara did not want Bruce residing in the family home. She repeatedly asked him to leave over a two-year period, and when he finally left the premises in November of 1967, he felt it necessary to seek her permission to re-enter and remove his personal possessions. Furthermore, there is evidence in the record that Barbara sought the exclusive use of the residence in a Family Court action. Although no final findings were apparently made at this time, Barbara was granted the right to remain in the

home as well as a support payment of $25 for the minor child of the couple.

Barbara testified before the special master that in her opinion the rental value of the property would be between $200 and $350 per month. Her own estimate of the value of her exclusive use of the premises greatly exceeds the amount she seeks from Bruce as contribution for her payments.

From the evidence in the record, we believe that there was ample evidence to support the conclusion of the trial justice that Barbara was not entitled to contribution from Bruce for payments made in connection with the Portsmouth property.

The plaintiff appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court for further proceedings.

Mr. Justice Joslin did not participate.

*Sheffied & Harvey, Ray H. Durfee,* for plaintiff.

*Kathleen Managhan, William W. Corcoran,* for defendant.