Colleen E. MELLOR

v.

Carleen M. O'CONNOR et al.

No. 97–172–Appeal.

Supreme Court of Rhode Island.

May 28, 1998.

Barry J. Kusinitz, Providence, for Plaintiff.

F. Monroe Allen, Pawtucket, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

In this appeal we address for the first time whether a surviving joint tenant who has become the sole owner of property is entitled to contribution from a deceased joint tenant's estate for payment of a jointly executed promissory note secured by a mortgage on the property. The surviving joint tenant, Colleen E. Mellor (plaintiff) has appealed from a Superior Court order granting judgment as a matter of law in favor of the defendants, Carleen M. O'Connor and Lisa S. O'Connor, in their combined capacity as coexecutrices of the estate of Robert F. O'Connor (decedent). For the reasons set forth below, we affirm.

### Facts and Procedural History

On June 13, 1991, plaintiff and decedent, who, plaintiff testified, were engaged to be married, jointly purchased a home in Warwick, Rhode Island, for $229,000. The plaintiff contributed $11,450 as an initial deposit toward the purchase price, and decedent contributed approximately $85,000. They obtained a mortgage from Plymouth Mortgage Company for $140,000, the balance of the

purchase price, and jointly executed a promissory note (note) in that amount. The note provided in relevant part:

"If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. * * * The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note."

Approximately one month after the purchase of the Warwick property, and prior to the scheduled first payment on the note, decedent died. His estate was probated, and decedent's two daughters, defendants here, were named executrices of his estate. According to plaintiff's testimony, she subsequently sold the home she owned prior to the purchase of the Warwick property and used the proceeds from the sale to pay off the mortgage on the Warwick property.

On October 28, 1991, plaintiff filed a claim against the estate for $70,332.26, the figure purported to represent half the balance that had been due under the note. That claim was denied by defendants on the same day. On March 20, 1992, plaintiff filed the instant action in Kent County Superior Court pursuant to G.L.1956 § 33–11–48.[1] The first count of the complaint alleged that the estate had "breached its obligation under the Note by failing to pay any portion of the sums due under the Note, and by disallowing the claim based on the obligation presented to the Estate by Plaintiff." The second count of the complaint alleged that the estate was liable for "one-half of the total amount owing under the Note, plus one-half of all expenses incurred, or to be incurred, to maintain the Residence, under the doctrine of equitable contribution." The plaintiff sought as damages half of the amount that she paid to discharge the note.

The defendants thereafter filed a four-count "Counterclaim and Set–Off." Their first count alleged that plaintiff had made no contribution toward the purchase price of the Warwick property, and judgment was sought against plaintiff for half the amount contributed by decedent toward the purchase price of the Warwick property prior to his death. The second count alleged that plaintiff had breached an oral agreement between herself and decedent whereby each would contribute equally to the purchase of the Warwick property and would sell other real estate owned by them individually. As a result of said breach, defendants sought judgment against plaintiff for the amount of decedent's contribution. In the third count, defendants averred that plaintiff had in her possession certain tangible personal property, including household furnishings, that were owned by decedent and had never been conveyed to plaintiff. The defendants sought either the return of said tangible property or, in the alternative, damages based on the value thereof. The defendants' fourth and final counterclaim alleged that plaintiff was unjustly enriched by decedent's contribution toward the purchase price of the Warwick property since she had not made a "corresponding contribution." The defendants sought judgment against plaintiff for the amount of decedent's contribution.

On May 27, 1993, plaintiff filed a motion to dismiss counts 1 and 2 of defendants' counterclaim and a motion for summary judgment in respect to count 1 of her complaint. On August 4, 1993, a Superior Court justice, who found that plaintiff "relied on facts which are outside the pleadings" in respect to her motion to dismiss counts 1 and 2 of defendants' counterclaim, treated that motion as a motion for summary judgment. Finding that counts 1 and 2 of defendants' counterclaim were "based upon an alleged [oral] agreement between [plaintiff] and the decedent," the justice concluded that an issue of fact existed in

---

1. In 1992, G.L.1956 § 33–11–48 provided in pertinent part:

　"**Action on disallowed claim.**—Suit on claims disallowed prior to the expiration of six (6) *months* from first publication may be brought no later than thirty (30) days after the expiration of six (6) months from first publication,

* * * unless the estate has been represented as insolvent or request that the claim before commissioners has been duly filed."

Subsequent to the filing of the instant action, § 33–11–48 was amended by P.L.1996, ch. 110, § 5, to incorporate minor changes in wording.

regard to the existence of such an agreement and therefore denied the motion. The motion for summary judgment on count 1 of plaintiff's complaint was also denied after the justice concluded that "to determine whether or not the doctrine of equitable contribution is even applicable in this matter, certain material facts would need to be established."

A jury trial commenced on April 29, 1996, and on May 1, 1996, following the presentation of each side's case and pursuant to Rule 50 of the Superior Court Rules of Civil Procedure,[2] the trial justice granted defendants' motion for judgment as a matter of law in respect to plaintiff's complaint. The trial justice specifically found that count 1 of plaintiff's complaint—alleging the breach of obligation under the note—was "a cause of action of the note holder," and that plaintiff had no right to contribution as alleged in count 2 of her complaint. The trial justice also granted plaintiff's motion for judgment as a matter of law in respect to defendants' first, second, and fourth counterclaims, finding that "there is no evidence of a contractual-type relationship" between plaintiff and decedent. On defendants' third counterclaim, the trial justice found for defendants and granted a mandatory injunction.

The plaintiff has appealed both the final judgment of May 1, 1996, and the interlocutory decisions of August 4, 1993,[3] and the parties subsequently filed a stipulation with this Court agreeing that judgment should be entered on the third count of defendants' counterclaim.[4]

## Standard of Review

The standard for granting a motion for judgment as a matter of law is the same as that applicable to its precursor, a motion for a directed verdict. *See, e.g., K & K Construction Inc. v. City of Warwick,* 693 A.2d 1038, 1039 n. 4 (R.I.1997) (Mem.); Super. R. Civ. P. 50 Advisory Committee Notes. On such a motion, the trial justice

"considers the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draws from the record all reasonable inferences that support the position of the nonmoving party. * * * If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for [judgment as a matter of law] must be denied, and the issues must be submitted to the jury for determination." *DeChristofaro v. Machala,* 685 A.2d 258, 262 (R.I.1996).

In reviewing a trial justice's decision on a motion for judgment as a matter of law, this Court "is bound by the same rules and analysis as the trial justice." *Hoffman v. McLaughlin Corp.,* 675 A.2d 404, 405 (R.I. 1996).

## Majority/Minority Distinction and Rationale for Adopting Minority Rule

Over forty years ago, this Court addressed the question of whether a complainant was entitled "to have the executor of her deceased husband's will directed to pay from

---

2. Rule 50(a) of the Superior Court Rules of Civil Procedure provides in relevant part:

   "(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue."

3. In their briefs to this Court and at oral argument, the parties focused exclusively upon plaintiff's claim of error in the granting of judgment as a matter of law in respect to plaintiff's com-

plaint. Neither party addressed the issue of the propriety of the 1993 summary judgment decisions. It is well established that "we do not generally review an order denying summary judgment because that denial is an interlocutory determination and the parties are not entitled to appeal it as a matter of right," *DiQuinzio v. Panciera Lease Co.,* 641 A.2d 50, 53 (R.I.1994); instead, such a denial is reviewed, in limited circumstances, through the granting of a petition for certiorari. *Id.* In light of these facts, we confine our analysis and discussion to the trial justice's ruling on defendants' Rule 50 motion.

4. The defendants have not appealed the trial justice's judgment as a matter of law on their first, second, and fourth counterclaims; therefore, those claims are not before us.

the estate the [total] amount due at the time of his death on a certain joint and several promissory note executed by her and her husband, which note is secured by a mortgage on real estate the title to which is now in complainant." *Gardner v. Waldman,* 83 R.I. 12, 13, 111 A.2d 922, 922 (1955). The *Gardner* Court held that the complainant was "not entitled to demand from respondent * * * *exoneration* from [her deceased husband's] estate" on an existing mortgage indebtedness, *id.* at 16, 111 A.2d at 923–24, but "on the issue of whether the important principle of *contribution* between the parties [was] properly applicable," the Court deferred after deeming the record "not ready for determination, either on questions of law or fact" on that issue. *Id.* at 17, 111 A.2d at 924. (Emphases added.) The instant case brings the issue of entitlement to contribution from a deceased joint tenant's estate squarely before the Court.

Two lines of authority have developed on this issue: the majority rule, which permits contribution to a surviving joint tenant, and the minority rule, which holds that the survivor is not entitled to contribution. The plaintiff has argued that "[t]he minority view essentially attributes survivorship characteristics of joint estates to joint and several obligations and forgets that the right of contribution flows from the creation of the debt rather than from the ownership of collateral for that debt." She has urged this Court to adopt the majority rule.

■ The defendants, on the other hand, argued that because "[c]ontribution and exoneration are essentially the same concept differing only in degree," the rationale applied to exoneration in *Gardner* should be extended to the issue of contribution in this case. Because plaintiff "became the sole owner of the [Warwick property on decedent's death] and basically received the equity value in the home of $85,000 contributed by [the decedent]," defendants maintained that granting plaintiff's request for contribution would be "unjust and inequitable." We agree. Under the joint tenancy, all decedent's interest in the property has passed to plaintiff survivor, who retained total ownership. Because decedent had no remaining

interest, we deem it inequitable to compel contribution from his estate, and thus we adopt the minority rule.

The long-standing conflict among state courts on the issue of the entitlement of a surviving tenant to contribution from the estate of a deceased cotenant toward payment of a joint and several obligation is well documented. *See generally,* C.C. Marvel, Annotation, *Right of surviving spouse to contribution, exoneration, or other reimbursement out of decedent's estate respecting liens on estate by entirety or joint tenancy,* 76 A.L.R.2d 1004 (1961); *see also Tenancy by the Entirety—Deceased Cotenant's Estate Must Contribute to Payment of a Joint Debt Secured by Land Held by the Entirety.—In re Keil's Estate (Del.1958),* 73 Harv. L.Rev. 425 (1959).

Courts adopting the majority rule have emphasized

"one or more of the following principles or factors: (1) the joint and several nature of the obligation, combined with the application of the ordinary rule that payment by one joint debtor of more than his share of the obligation equitably entitles him to contribution from those jointly liable with him; (2) the separation of the obligation from the property by which it is secured, and for the purchase or improvement of which it was undertaken; and (3) the benefit to the decedent's estate of the payment of an obligation upon which it otherwise could be found liable." 76 A.L.R.2d at 1007–08.

*See, e.g., In re Estate of Keil,* 145 A.2d 563, 565 (Del.1958) (holding that spouse was entitled to contribution from estate of deceased spouse equal to one-half of their joint obligation secured by mortgage on property held by them as tenants by the entirety because (1) right of contribution flows from debt, not from mortgage lien, and (2) joint and several obligation of two parties, whether or not married, creates obligation that is, on its face, for benefit of both); *In re Dowler's Estate,* 368 Pa. 519, 84 A.2d 209, 210 (1951) (holding same and reasoning that controlling factor was that spouses were both personally liable on debt in question and that payment of indebtedness by one of two or more joint

obligors is, prima facie, for the benefit of all, entitling the one making payment to contribution).

In contrast, courts favoring the minority rule have emphasized

"one or more of the following principles or factors: (1) the nature of the estate in the property securing the obligation, whereby the survivor acquires the whole interest therein, or more accurately, retains the *same* interest, namely, the whole, but on an exclusive basis, inasmuch as the estate of the deceased does not retain the identical whole interest owned by him in his lifetime; and (2) the resultant lack of benefit to the deceased's estate from the payment of an obligation which no longer constitutes a common burden, because of the nonretention by the estate of any interest in the property." 76 A.L.R.2d at 1010.

See, e.g., *Lopez v. Lopez*, 90 So.2d 456, 458–59 (Fla.1956) (holding that surviving spouse was not entitled to contribution from deceased spouse's estate of sum equal to one-half of balance due on two purchase money mortgages and notes executed by both parties on land held by them as tenants by the entirety; emphasizing that because interest of decedent in property ceases at death, it would be "unconscionable and inequitable" to hold decedent responsible for part of purchase price thereof that was unpaid at death); *Ratte v. Ratte*, 260 Mass. 165, 156 N.E. 870, 871 (1927) (holding that surviving spouse was not entitled to contribution from estate of deceased spouse as compensation for discharge of mortgage executed by both spouses upon property held as joint tenants; reasoning that, at time of payment of mortgage, there existed no common burden upon land owned exclusively by surviving joint tenant).

Recognizing that the issue presented by plaintiff's claim for contribution had not been determined in this state, the trial justice appears to have relied primarily on the case *Florio v. Greenspan*, 340 Mass. 642, 165 N.E.2d 753 (1960). In that case, the plaintiff and her husband had jointly executed a promissory note and mortgage on a residential property. *Id.* at 754. Following the death of her husband, the plaintiff brought a bill in equity "for declaratory relief against the administrator of [her deceased husband's] estate for an adjudication that the unpaid balance of the note was an obligation of the estate which the administrator must discharge." *Id.* The Supreme Judicial Court of Massachusetts relied on its earlier decision in *Ratte* and held that it was of no consequence that *Ratte* dealt with a joint tenancy, whereas the case before the court involved a tenancy by the entirety. *Id.*, 165 N.E.2d at 754–55. The court affirmed the decree of the trial court, and held that the plaintiff was entitled to neither exoneration nor contribution, setting forth a rationale with which we are compelled to agree: "despite the fact that both spouses were originally equally liable for the mortgage debt, it is inequitable to require the estate of the deceased spouse to contribute to the discharge of an encumbrance on property, the entire ownership of which is in the surviving spouse." *Id.* at 755.

We therefore hold that a surviving joint tenant who has become sole owner of property is not entitled to contribution from a deceased joint tenant's estate toward payment of a jointly executed promissory note secured by a mortgage on said property. It is our conclusion that, on balance, equity favors this outcome that logically obtains from our decision in *Gardner*, which favorably cited *Ratte*'s holding and rationale. *Gardner*, 83 R.I. at 15–16, 111 A.2d at 923. Although the cases from jurisdictions adopting the minority position have involved parties who were married and who, with the exception of the couple in *Ratte*, held property as tenants by the entirety, this distinction does not affect our analysis. In *Bonner v. Arnold*, 296 Or. 259, 676 P.2d 290 (1984), for example, the Supreme Court of Oregon held that a son was not entitled to contribution from the estate of his deceased mother toward payment of a joint debt secured by real property. The court reasoned:

"It is clear * * * that if the law would require contribution from the mother's estate for one-half the debt, the estate would receive no benefit because at the time of the mother's death the entire property vested solely in the son. *Contribution is*

*an equitable remedy used to prevent unjust enrichment. If it were applied in this case, it would result in unjust enrichment rather than prevent it.* If the property had been held as tenants in common and the estate paid half of the joint obligation, the estate would benefit by an increase in its equity. In this case, however, the estate would be $20,000 poorer, with nothing to show for the expenditure." *Id.* at 291. (Emphasis added.)

This Court has held that "[t]he doctrine of equitable contribution is applied to prevent one of two, or more, joint obligors being required to pay more than his [or her] share of a common burden, or to prevent one obligor from being unjustly benefited or enriched at the expense of another." *Kerney v. Kerney,* 120 R.I. 209, 214, 386 A.2d 1100, 1103 (1978) (quoting *Lopez v. Lopez,* 90 So.2d 456, 458 (Fla.1956)). In concurring with the proposition that "contribution is based upon general considerations of justice, and not upon any notion of an implied promise," 4 John Norton Pomeroy, *Equity Jurisprudence* § 1418, at 1072 (5th ed.1941), we are of the opinion that plaintiff would be unjustly enriched should her request for contribution from decedent's estate be granted.

■■■ "The right of contribution arises only *after* a redemption, and necessarily depends upon the equities subsisting between all those persons *who have an interest in the premises subject to the mortgage,* and who therefore have a *common,* but not necessarily an *equal,* interest in being relieved from the burden of the mortgage." 4 Pomeroy, § 1221, at 661. (Emphasis added and emphases in original.) Moreover, "[w]henever * * * a mortgage rests upon land which is owned by several persons in such a manner that their equities as between themselves are equal, and one of them redeems from the mortgage, he is entitled to a *pro rata* contribution from the other owners." *Id.,* § 1222, at 662. It is undisputed—and indeed indisputable—that, upon decedent's death, ownership of the Warwick property became solely vested in plaintiff; decedent's estate was dispossessed of any interest therein. *Knibb v. Security Insurance Company of New Haven,* 121 R.I. 406, 410, 399 A.2d 1214, 1216 (1979). At the time plaintiff paid off the mortgage on

the property, she was the exclusive owner as the surviving joint tenant. *See Ratte,* 156 N.E. at 871. Under the unambiguous terms of the note freely executed by plaintiff and decedent, each was obligated for the entire debt, and each was considered to have purchased and owned the Warwick property in its entirety. The *Lopez* court reasoned on similar facts that

"the debt of a purchase money mortgage in such a case as before us * * * must be considered as between the [parties] themselves as being a debt being owed wholly by the [plaintiff], and simultaneously wholly by the [decedent]. Since in the purchase of said [property] each tenant is said to have acquired the whole estate therein, it is consistent that the debt incurred would be considered to be the whole debt of each.

" * * * *

"It is clear to us that in a case such as here, the estate of the *decedent receives no benefit or enrichment which, in equity, requires or justifies contribution being made to the surviving [tenant].* On the other hand the survivor received all of the estate for which the obligation was incurred and cannot be heard to complain." *Lopez,* 90 So.2d at 459. (Emphasis added.)

*See also* T. Marsh, *Mortgages: Contribution from Estate of Deceased Joint Tenant,* 3 Hastings L.J. 161, 162 (1952) ("After the death of one joint tenant, the survivor [by paying off the mortgage] is not removing a lien on property in which he and the estate of the deceased joint tenant are jointly interested, but is removing a lien from his own property; property in which he alone is interested. It is unjust to require the estate of the deceased joint tenant to contribute toward paying off an encumbrance on the property of another").

■■■ Although it is true that had there been a default in the payment of the mortgage on the Warwick property and had a subsequent foreclosure failed to garner an amount sufficient to cover the note, mortgagee Plymouth Mortgage Company could have pursued an action against the decedent's estate, *Island Savings Bank v. Galvin,* 20 R.I. 347, 348, 39 A. 196, 196 (1898), the plaintiff

here does not stand in the shoes of the creditor. By virtue of the decedent's death, she now possesses all the rights incident to ownership of the subject property, not the least of which is the right to exclude others, including the decedent's heirs. It is our opinion that "[t]he right of contribution is a personal obligation * * * founded * * * upon principles of equity and fundamental justice. * * * It can never be used to enforce an unjust and inequitable demand." *In re Estate of Keil,* 145 A.2d at 567 (Bramhall, J., dissenting).

Therefore, the plaintiff's appeal is denied and dismissed. We affirm the judgment of the Superior Court, to which we return the papers in this case.