John **CLAUSON**

v.

**NEW ENGLAND INSURANCE COMPANY.**

No. 97–511–T.

United States District Court,
D. Rhode Island.

Feb. 1, 2000.

Marty C. Marran, Pawtucket, RI, for plaintiff.

Michael P. Duffy, Peabody & Arnold, LLP, Providence, RI, for defendant.

### MEMORANDUM OF DECISION

TORRES, Chief Judge.

John Clauson brought this diversity action, pursuant to R.I.G.L. §§ 27–7–1 and 27–7–2, to recover the unsatisfied portion of a malpractice judgment obtained by Clauson against his former attorney who was insured by New England Insurance Company ("NEIC").

The issues presented are whether the insured's refusal to consent to a proposed settlement of Clauson's claim limits NEIC's liability under the policy to the amount of the proposed settlement; and, whether Clauson is entitled to interest that would cause any recovery from NEIC to exceed its policy limit.

I find that, because the insured's refusal was not unreasonable, Clauson is entitled to recover from NEIC the unpaid balance of the judgment against its insured. I also find that, under Rhode Island law, the amount that Clauson may recover cannot exceed the policy limit.

### FACTS

The facts, as stipulated to by the parties, are as follows. In early 1991, attorney Sanford Kirshenbaum represented John Clauson in a divorce proceeding in the Providence County Family Court. During that proceeding, a commissioner was appointed to sell a fishing trawler owned by Clauson which was encumbered by a security interest in the amount of $158,000. The commissioner listed the vessel for sale at a price of $267,300 based upon a professional appraisal of its value.

Several months later, the commissioner received a bid of $160,000 and a hearing was scheduled for June 4, 1991, to determine whether the bid should be accepted. Kirshenbaum failed to attend that hearing and, on June 6, an order approving the sale was entered. That order was not appealed because new counsel retained by Clauson advised against an appeal.

Clauson, later, sued Kirshenbaum for malpractice alleging that, because of Kirshenbaum' s absence from the June 4 hearing, the trawler was sold for much less than its true value. NEIC, as Kirshenbaum's malpractice insurer, undertook defense of that action under a reservation of rights and hired attorney Michael Stone to represent Kirshenbaum.

During the course of settlement negotiations, Kirshenbaum consistently main-

tained that his alleged negligence in failing to attend the June 4 hearing did not cause any loss to Clauson because the sale price of $160,000 would have been approved even if Kirshenbaum had been present. Stone agreed that it was "not at all clear that Mr. Kirshenbaum's presence would have persuaded the judge to disapprove the sale" and he so advised NEIC. Nevertheless, because the sale was for $100,000 less than the vessel's appraised value; and, because Kirshenbaum's failure to appear put him at risk, Stone recommended that NEIC establish a $40,000 reserve for the case "despite the fact that the underlying claim is somewhat speculative."

In 1994, the parties agreed to submit Clauson's claim to non-binding arbitration and the arbitrator awarded Clauson $20,000 plus interest of $9,000, an amount well within Kirshenbaum's policy limit of $100,000.00 [1]. Stone recommended payment of that amount because a trial might result in a larger verdict against Kirshenbaum.

NEIC informed Kirshenbaum that it was willing to pay the award and that Clauson was willing to accept that payment in full settlement of his claim. When Kirshenbaum refused to authorize the settlement, NEIC informed him that it considered his refusal to be "unreasonable" and that, unless he consented, it would withdraw its defense and consider its liability, under the policy, to be limited to $20,000.00. However, Kirshenbaum's position remained unchanged and the arbitration award was appealed.

After a bench trial, a Superior Court justice found that the appraisal of $267,300.00 accurately reflected the vessel's value and determined that, if properly advised, Clauson could have purchased it for $179,167.50, the amount necessary to satisfy the outstanding security interest and the commissioner's fee. The judge calculated Clauson's damages as the value of the vessel (i.e., $267,300) less the amount

Clauson would have had to pay for it (i.e., $179,167.50) plus Clauson's one-half share of the amount that had to be paid to satisfy the obligations remaining after the commissioner's sale (i.e., $9,583.50, being one half of $19,167). Accordingly, judgment was entered against Kirshenbaum in the amount of $97,716.30, plus interest at the statutory rate of 12% per annum.

Kirshenbaum moved for a new trial on the ground that Clauson never had asserted a claim based on Kirshenbaum's failure to advise him that he should offer to purchase the vessel himself and that no expert evidence was presented supporting a finding that such failure constituted malpractice. That motion was granted and the case was retried to permit the presentation of expert testimony regarding Kirshenbaum's alleged failure to properly advise Clauson.

Following the retrial, the same judge, again, concluded that Kirshenbaum was negligent in not advising Clauson to purchase the vessel himself and re-entered judgment in Clauson's favor in the amount of $97,716.00, plus interest.

NEIC has paid Clauson the sum of $29,000, the amount that it was willing to pay in satisfaction of the arbitration award. However, NEIC maintains that, under the terms of Kirshenbaum's policy, it has no responsibility for the balance of the judgment against Kirshenbaum because Kirshenbaum refused to consent to the proposed settlement.

### Discussion

#### I. The Statutes

Because a liability insurance policy is a contract between the insurer and the insured, third parties, ordinarily, lack standing to compel payment under the policy. *See Skaling v. Aetna Insurance Co.*, 742 A.2d 282, 291 (R.I.1999) (a tortfeasor's insurer is "liable to the injured parties only

---

1. A letter from NEIC suggests that the policy limit includes defense costs but there is nothing in the stipulated statement of facts that either confirms this or indicates what those costs were.

because of the insurer's contract to indemnify its insured tortfeasor and ... the insurer owe[s] no duty to the injured parties"). However, R.I.Gen.Laws §§ 27–7–1 and 27–7–2 permit an injured party to sue a tortfeasor's liability insurer in order to obtain satisfaction of a judgment obtained against the tortfeasor.

Obviously, in such cases, the third party's rights against the insurer can be no greater than the rights possessed by the insured into whose shoes the third party steps. Thus, the insurer is not liable to the injured party for damages that exceed the limits of the insured's policy. *See Factory Mutual Liability Ins. Co. of America v. Cooper*, 106 R.I. 632, 262 A.2d 370 (1970).

Accordingly, the Court, first, must determine the amount of Kirshenbaum's coverage under the policy issued to him. More specifically, the issue to be decided is whether Kirshenbaum's refusal to authorize a settlement for the amount awarded by the arbitrator limits NEIC's indemnification obligation to that amount.

## II. *The Policy*

### A. Rules of Construction

Under Rhode Island law, an insurance policy is construed in the same manner as any other contract. *See Mallane v. Holyoke Mutual Insurance Co. in Salem*, 658 A.2d 18, 20 (R.I.1995). When the provisions are clear and unambiguous, they must be applied as written. On the other hand, where an ambiguity exists and the provisions are susceptible to more than one reasonable interpretation, they should be construed strictly against the insurer. *Employers Mutual Casualty Co. v. Pires*, 723 A.2d 295, 298 (R.I.1999), *Amica Mutual Ins. Co. v. Streicker*, 583 A.2d 550, 551 (R.I.1990).

In determining whether an ambiguity exists, the policy must be examined "in its entirety, giving each word its plain, ordinary, and usual meaning." *Employers Mutual*, 723 A.2d at 298. *See also*

*McGowan v. Connecticut Gen. Life Ins. Co.*, 110 R.I. 17, 289 A.2d 428, 429 (1972). Moreover, the policy should be construed in a manner that harmonizes and gives effect to all of its material terms and avoids rendering any of its provisions meaningless. *See Psaty & Fuhrman, Inc. v. Housing Authority of City of Providence*, 76 R.I. 87, 68 A.2d 32, 35 (1949). *See also Cohen v. Steve's Franchise Co., Inc.*, 927 F.2d 26, 29 (1st Cir.1991) (applying Mass. law).

### B. The Consent Provision

Like many malpractice policies, Kirshenbaum's policy prevents the company from settling claims against Kirshenbaum without Kirshenbaum's consent. It provides that:

> The Company shall have the right to make any investigation it deems necessary and with the written consent of the insured, said consent not to be *unreasonably* withheld, any settlement of any claim covered by the terms of this policy.

(Emphasis added)

Clauses like this sometimes are referred to as "pride" provisions. They commonly are included in professional liability policies in recognition of the fact that settlement of claims may adversely and unjustifiably affect the insured's professional reputation. *See* R. Long, *Law of Liability Insurance*, § 12C.08[8] (1998).

This clause also prohibits Kirshenbaum from "unreasonably" withholding his consent to a proposed settlement. Prohibitions like that are directed at situations in which it is unlikely that any potential judgment will exceed the policy limit; and, therefore, the insured may have little incentive to consent to a settlement because the cost of defense and the risk of a larger judgment are borne, entirely, by the insurer. *See Id.*

C. Effect of Withholding Consent

■ There is no question that, if Kirshenbaum unreasonably withheld his consent, NEIC's indemnification obligation would be capped at the $29,000 awarded by the arbitrator. NEIC argues that this limitation would be equally applicable even if Kirshenbaum acted reasonably in withholding his consent. It relies on the following paragraph of the policy that immediately follows the aforementioned provision requiring consent to settle:

If the insured shall refuse to consent to *any* settlement or compromise recommended by the Company and acceptable to the claimant, and elects to contest the claim, suit or proceeding, then the Company's liability shall not exceed the amount for which the Company would have been liable for damages if the claim or suit or proceeding had been so settled or compromised when so recommended. The company shall have no liability for claims expenses accruing thereafter and the Company shall have the right to withdraw from the further defense thereof by tendering control of said defense to the Insured.

(Emphasis added)

NEIC contends that the reference in the first sentence to "any" settlement means that coverage is limited to the amount of the proposed settlement in *every* case where the insured refuses to consent, without regard to whether the insured acted reasonably. However, that interpretation conflicts with the provision in the preceding paragraph requiring the insured's consent to settle.

By preventing the insurer from settling without the insured's consent and prohibiting the insured from *un*reasonably withholding consent, that provision, in effect, confers on the insured the right to *reasonably* withhold consent. Construing the policy in the manner suggested by NEIC would negate that right. The insured's refusal to consent to a settlement, however reasonable, would deprive the insured of the full indemnification protection for which he contracted. In addition, it would deprive the insured of its right to be defended by the insurer because the second sentence of the paragraph upon which NEIC relies would allow NEIC to withdraw from further defense.

At the very least, NEIC's reading of the policy would render meaningless the provision prohibiting consent from being unreasonably withheld. If coverage were reduced to the amount of a proposed settlement even where the insured reasonably refuses to consent, the prohibition against unreasonably withholding consent would be superfluous. Coverage would be reduced whether the insured acted reasonably or unreasonably.

In short, in order to give effect to both provisions, the policy must be construed to limit NEIC's liability to the amount of the proposed settlement only if Kirshenbaum's refusal to consent was unreasonable.

### III. *Reasonableness of Refusal*

■ The burden of proving the applicability of policy exclusions and limitations rests on the insurer. *See General Accident Insurance Co. of America v. American Nat'l Fireproofing, Inc.,* 716 A.2d 751, 757 (R.I.1998). *See also* 19 Mark S. Rhodes, Couch on Insurance 2d § 79:315 (1983).

In determining whether an insured acted reasonably in withholding consent to settle, one must look at the facts and circumstances existing at the time the decision was made. The test is not whether the insured misjudged the likelihood of being held liable for more than the amount of the proposed settlement. Rather, it is whether a reasonable person in the insured's position could have made the same decision. The distinction is especially important with respect to malpractice cases where settlement may adversely affect the insured's professional reputation.

■ In this case, NEIC has failed to establish that Kirshenbaum's refusal was

unreasonable. Although the attorney hired by NEIC to represent Kirshenbaum advised against appealing the arbitrator's award because of the risk that the trial might result in a higher verdict, he agreed that there was a serious question as to whether Kirshenbaum's presence at the hearings would have prevented the vessel's sale for $160,000 from being approved. In addition, the attorney recommended that the case be reserved for $40,000, only $11,000 more than the proposed settlement.

It also is significant that the Superior Court judge who heard the case did not attribute Clauson's loss to Kirshenbaum's failure to appear at the June 4 hearing. Rather, she found Kirshenbaum liable for failing to advise Clauson to purchase the vessel, himself, a claim that never had been made by Clauson.

Briefly stated, Kirshenbaum had reasonable grounds to believe that he might not be found liable because there was a serious question regarding whether his failure to attend the June 4 hearing caused the loss claimed by Clauson. He also had reasonable grounds to believe that the risk of increased exposure was relatively modest. An arbitrator had fixed Clauson's loss at $20,000 plus interest and the attorney hired by NEIC recommended a $40,000 reserve.

Finally, there was justification for Kirshenbaum to be concerned about the effect that a settlement, that could be construed as a tacit admission of liability, might have on his professional reputation. Although many attorneys may have been less adamant about resisting settlement in the face of their inexcusable failure to appear on behalf of a client, NEIC has not established that Kirshenbaum acted unreasonably in resisting payment of a claimed loss that he did not believe was attributable to his conduct.

**2.** Nor does the limitation cap the insurer's liability to the insured for breach of the insur-

## IV. *Interest*

Under Rhode Island law, a liability insurer's obligation to pay a judgment obtained by a third party against its insured, generally, cannot exceed the limit of coverage established by the policy. *Skaling v. Aetna Insurance Co.,* 742 A.2d 282, 291 (R.I.1999) ("Although the insured tortfeasor remain[s] liable to the injured party for all damages and for all prejudgment interest ... there [is] no reasonable justification for requiring the insurer to pay more than the liability limits included in the contract."). *Id.* at 291 (citing *Factory Mutual Liability Ins. Co. of America v. Cooper,* 106 R.I. 632, 262 A.2d 370 (1970)). Thus, ordinarily, an insurer is not liable for interest on the judgment to the extent that it would cause the total judgment against the insured to exceed the policy limit. *See Allstate Ins. Co. v. Pogorilich,* 605 A.2d 1318, 1321 (R.I.1992) ("An *uninsured/under insured* motorist policy limit may not be expanded to include prejudgment interest even though the injured party may be entitled to recover such prejudgment interest from the tortfeasor") (emphasis added). *Id.*

This limitation does not apply where the insurer has rejected an offer by the third-party claimant to settle for an amount within the policy limit.[2] R.I.Gen.Laws § 27–7–2.2 provides:

> In any civil action in which the defendant is covered by liability insurance and in which the plaintiff makes a written offer to the defendant's insurer to settle the action in an amount equal to or less than the coverage limits on the liability policy in force at the time the action accrues, and the offer is rejected by the defendant's *insurer,* then the defendant's insurer shall be liable for all interest due on the judgment entered by the Court even if the payment of the judgment and interest totals a sum in excess of the policy coverage limitation. (Emphasis added)

ance contract. *Skaling,* 742 A.2d at 292.

The manifest purpose of awarding prejudgment interest in such cases is to encourage early settlement of claims. *Skaling*, 742 A.2d at 292 (citing *Martin v. Lumbermen's Mutual Casualty Co.*, 559 A.2d 1028, 1031 (R.I.1989)). By making the insurer liable for interest that extends beyond the policy limit, the statute seeks to provide the insurer with an incentive to settle even where the demand equals or approaches that limit. *See Skaling*, 742 A.2d at 292.

In this case, the statute is inapplicable. It only applies when the insurer rejects a settlement offer by the plaintiff. Here, NEIC did not reject any settlement offer made by Clauson. On the contrary, it sought to settle the case for the amount demanded by Clauson. Those efforts were frustrated when Kirshenbaum rejected the settlement.

Furthermore, penalizing NEIC for Kirshenbaum's intransigence when NEIC, itself, was prepared to accept the proffered settlement would not serve the purpose underlying § 27–2–2.2. On the contrary, the policy of encouraging early settlement is furthered by making the insured rather than the insurer liable for interest in excess of the policy limit when the insurer is willing to settle and the insured withholds consent. Its effect will be to deter an insured from unreasonably withholding consent to settling.

### Conclusion

For all of the foregoing reasons, the Court finds that NEIC is liable to Clauson in the amount of its policy limit of $100,000 less the $29,000 already paid to Clauson. Accordingly, judgment may enter for John Clauson in the amount of $71,000 without prejudice to Clauson's right to pursue Kirshenbaum for the balance of the interest accrued on Clauson's judgment against Kirshenbaum.

IT IS SO ORDERED.