DECISION
Before this Court are motions for a new trial and for an assessment of costs. The underlying case is a medical malpractice action brought by Sarah F. Boyle individually and in her capacity as parent and next friend of her sons, Mathias Boyle and Casey Boyle ("Plaintiff"), against Henry E. Laurelli, M.D. and Henry E. Laurelli, M.D., Inc. ("Defendant"). The case was tried before a jury, and a verdict was rendered on April 15, 2005 in favor of Defendant. Plaintiff has filed a motion for a new trial, and Defendant has filed a motion for costs. Jurisdiction is pursuant to Super. Ct. R. Civ. P. 54 and 59.
 FACTS AND TRAVEL
Plaintiff was in a motor vehicle accident in 1992 and suffered a neck injury which resulted in progressively worsening neck and shoulder pain in the years thereafter. An MRI taken in 1995 revealed a bulging C5 and C6 disc. (Letter from Marc E. Eichler, M.D. to Cooley Manion Jones LLP (May 24, 2001).) In May of 1998, Plaintiff began experiencing significant pain on her right side in addition to the already substantial pain in her neck and shoulder areas. As a result, she sought treatment from Defendant, a neurosurgeon practicing at Rhode Island *Page 2 
Hospital. Id. An MRI at that time showed that Plaintiff had suffered a herniated disc and, consequently, Defendant performed an anterior discectomy with interbody fusion on September 17, 1998. Id.
Plaintiff's pain persisted in the weeks following the discectomy. Plaintiff sought a second opinion when her pain became progressively worse. She was examined by Marc E. Eichler, M.D., a neurosurgeon at Brigham Women's Hospital in Boston, Massachusetts ("Eichler"). Diagnostic tests revealed a non-union in Plaintiff's cervical vertebrae at C5 and C6. Id. After consulting with Eichler, Plaintiff then elected to undergo a second surgery to try to stabilize the non-union in her vertebrae. Id. Following the second surgery, Plaintiff's pain persisted, and, on June 6, 2000, she opted for a third procedure, this time a direct repair of her anterior non-union with placement of a new bone plug and a titanium plate. Id.
In the course of performing the direct repair, Eichler found significant amounts of cartilage and disc debris in the surgical site which, Eichler opined, was left behind from Defendant's initial discectomy. Id. Eichler's opinion at that time was that the cartilage and disc debris was preventing the fusion from healing completely and was the cause of her significant pain. Thereafter, on June 29, 2000, Eichler again operated on Plaintiff to inspect the previously done fusion and to remove screws and other instrumentation from the surgical site. (June 29, 2000 Operative Note.) In all, as of June of 2000, despite having undergone four surgeries, Plaintiff continued to experience substantial, radiating pain in her right upper extremity, in her neck, and in her shoulders. In October of 2001, Eichler performed another discectomy, the same procedure originally attempted by Defendant, which was unsuccessful.
In the years that followed, Plaintiff had a number of follow-up appointments with Eichler, underwent acupuncture therapy, presented to the pain service at Brigham Women's *Page 3 
Hospital, and to an outside pain service center. In June of 2004, Eichler noted that she was still suffering from "significant interscapular pain and severe right upper extremity dysesthetic radiating pain in a C6 distribution." (Letter from Marc E. Eichler, M.D. to Cooley Manion Jones LLP (June 8, 2004).) Eichler indicated that, in his opinion, Plaintiff had exhausted her medical options by that point and, consequently, her pain would likely be permanent. Id.
In the midst of receiving the aforementioned treatment, Plaintiff filed the instant legal action against Defendant, alleging that his negligent surgical treatment and care on September 17, 1998 were the direct and proximate causes of her physical and emotional injury.[1]
On April 15, 2005, following a ten-day jury trial, a jury rendered a verdict in favor of Defendant. (See Verdict Form (April 15, 2005).)
On April 25, 2005, Plaintiff[2] timely filed the instant motion for new trial pursuant to Super. Ct. R. Civ. P. 59. As grounds, Plaintiff avers that the jury's verdict was against the weight of the evidence; that certain comments made by Defendant's counsel during the course of the trial were prejudicial to Plaintiff; and that medical records admitted into evidence were not relevant to the proceeding and were prejudicial to Plaintiff. Defendant filed an objection to Plaintiff's motion and a motion for assessment of costs pursuant to Super. Ct. R. Civ. P. 54.
 STANDARD OF REVIEW
With respect to a motion for a new trial,
 "[a] new trial may be granted to all or any of the parties and on all or part of the issues, (1) in an action in which there has been a trial by jury for error of law occurring at the trial or for any of the reasons for which new trials have heretofore *Page 4 
been granted in actions at law in the courts of this state." Super. Ct. R. Civ. P. 59(a).
When reviewing a motion for a new trial, the trial justice sits as a "superjuror" Long v. Atl. PBS, Inc., 681 A.2d 249, 252 (R.I. 1996) (citing Barbato v. Epstein, 91 R.I. 191, 193-94, 196 A.2d 836, 837
(1964)) and, therefore, "is required to independently weigh, evaluate, and assess the credibility of the trial witnesses and evidence."Martinelli v. Hopkins, 787 A.2d 1158, 1165 (R.I. 2001) (citingGraff v. Motta, 748 A.2d 249, 255 (R.I. 2000)) (citation omitted). The trial justice should not overturn the jury's verdict unless the "verdict is against the preponderance of the evidence and thereby fails to either do justice to the parties or respond to the merits of the controversy."Crafford Precision Prods. Co. v. Equilasers, Inc., 850 A.2d 958, 963
(R.I. 2004) (quoting Connor v. Bjorklund, 833 A.2d 825, 827 (R.I. 2003)) (citation omitted). Accordingly, "[i]f the trial justice determines that the evidence is evenly balanced or is such that reasonable minds, in considering that same evidence, could come to different conclusions, then the trial justice should allow the verdict to stand."Martinelli v. Hopkins, 787 A.2d at 1165 (citing Graff v. Motta,748 A.2d at 255)) (citation omitted).
Furthermore, when allegedly prejudicial remarks are made in the course of the trial, the trial justice must use discretion to weigh the alleged prejudice and determine its overall effect on the jury's verdict.See Fargnoli v. Cecil, 102 R.I. 420, 424, 230 A.2d 883, 885 (1967). As such, the trial justice should make a finding as to whether "the portion . . . complained of was not of such a nature and was not in itself so prejudicial to [the complainant] as to require the court to take the case from the jury." Id. Similarly, "[d]ecisions concerning the admission or exclusion of evidence on the grounds of relevance are left to the sound discretion of the trial justice." Skaling v. Aetna Ins.Co., 742 A.2d 282 , 288 (R.I. 1999) (citing State v. Gabriau,696 A.2d 290, 294 (R.I. 1997)). Relative to evidentiary determinations, the trial justice is within his or her *Page 5 
discretion so long as that "discretion has been soundly and judicially exercised . . . in the light of reason applied to all the facts with a view to the rights of all the parties to the action." Id. (quotingCitrone v. SNJ Assocs., 682 A.2d 92, 95 (R.I. 1996)) (citation omitted).
 PLAINTIFF'S MOTION FOR A NEW TRIAL
Plaintiff contends that the jury's verdict was against the weight of the evidence. Defendant contends that the jury's verdict was consistent with the evidence and that reasonable minds could have arrived at the decision reached by the jury. Sitting as a "superjuror", this Court has reviewed all of the evidence and weighed the credibility of the witnesses and, after doing so, this Court does not find that the jury's verdict was against the greater weight of the evidence. Rather, the evidence was such that reasonable minds could have reached different conclusions. Gardiner v. Schobel, 521 A.2d 1011, 1015 (R.I. 1987);Bouley v. Gigney, 113 R.I. 522, 324 A.2d 318 (1974). In the instant case, the jury reached a verdict which responded to the merits of the case with a verdict well supported by the evidence.
The Court found very compelling Plaintiff's testimony regarding the physical and emotional pain she has experienced. In response to a well-articulated and instructive examination by her counsel, Plaintiff described the arduous and, often times, frustrating history of surgeries and complications which ultimately failed to mitigate her pain.
However, as compelling as Plaintiff's testimony was, Defendant's testimony was equally so. For example, while Plaintiff offered evidence showing that the standard of care necessitated that Defendant use loupes or other magnification to perform the discectomy, Defendant offered evidence that use of such loupes or magnification was not necessary, and that he could see clearly during surgery. Defendant's testimony was at all times consistent and unwavering. *Page 6 
Plaintiff's expert, and treating physician, Marc Eichler, M.D., a neurosurgeon, testified that Defendant's anterior neck surgery on September 17, 1998 was a failure; that, inter alia, Defendant left disc debris and cartilage in the surgical site which, ultimately, substantially contributed to Plaintiff's chronic neck and upper extremity pain, and that such condition is permanent.
Dr. Eichler testified that the cartilage and disc material left at the operative site by defendant should have been removed at the time of surgery. Defendant's failure to remove such cartilage and disc material fell below the standard of care and that such failure resulted in a nonunion of plaintiff's fusion, necessitated three additional surgeries which otherwise would have not been necessary, and resulted in chronic neck pain with attendant medical care. Further, Dr. Eichler testified that he did not send the cartilage and disc debris to pathology because it was not required, i.e., there was no tumor.
Defendant's expert, neurosurgeon Phillip Dickey, M.D., testified as to the standard of care and causation. He testified there was nothing Defendant could or should have done differently. He testified that the care provided by defendant was at all times within the standard of care. Further, he opined that defendant's decision to employ an allograft as opposed to an autograft was both appropriate and within the standard of care. Dr. Dickey testified that because there was no pathological evidence to support the "debris" theory, it is only speculative that it was cartilage and disc material, rather than scar tissue resulting from the surgery.
Also testifying on Defendant's behalf as to the standard of care and causation was neurosurgeon Richard Saunders, M.D. who opined that the fact that there was a non-union does not, in and of itself, indicate that Defendant's treatment fell below the standard of care. Such a non-union is a possible outcome of such surgery and not, in and of itself, indicative of medical *Page 7 
negligence. He also opined that such a non-union was not the source of symptoms plaintiff is currently experiencing. Rather, plaintiff's subsequent medical treatment was too aggressive and, inferentially, the cause or causes of Plaintiff's ongoing medical issues. See Rezendes v.Beaudette, 797 A.2d 474, 477-78 (R.I. 2002).
Additionally, the Court notes certain inconsistencies, or contradictions, relative to Plaintiff's trial testimony. Notably, when Defendant's counsel asked Plaintiff whether she had been involved in previous litigation, Plaintiff responded that she had not. Plaintiff's in-trial denial of any prior litigation was made at her peril as it opened the door for defense counsel to pursue the issue and reveal, conclusively, that Plaintiff's testimony regarding her past litigation history was not accurate. The defense offered indisputable evidence that Plaintiff was, in fact, previously involved in litigation. It is well-established Rhode Island law that the Court "may reject testimony when it is impeached or contradicted by other positive testimony or by circumstantial evidence or because of inherent improbabilities or contradictions that alone or in connection with other circumstances satisfy the justice of its falsity." Pearce v. Int'l Display Corp.,526 A.2d 501, 505 (R.I. 1987) (citing Barbato v. Epstein, 97 R.I. 191, 193,196 A.2d 836, 837 (1964)).
While the substance of the prior litigation was of no relevance to the instant case, the denial or failure to recollect the existence of such prior litigation is relevant on the issue of credibility, and this dent in Plaintiff's credibility did not help her cause.
Plaintiff next argues that certain comments made at trial by defense counsel "substantially prejudiced" Plaintiff's right to a fair trial. (Mot. for New Trial.) Specifically, Plaintiff maintains that references made to her job, the city in which she lives, her children's *Page 8 
schools, and other similar comments were prejudicial and warrant granting her motion for a new trial.
The Court agrees that some of Defendant's counsel's comments were not probative of any element germane to this case, i.e. schools, autos, vacation spots. That determination, however, does not warrant summarily granting Plaintiff's motion unless such comments are found to be unduly prejudicial.
It is well-settled that
 "not every inappropriate remark by counsel justifie[s] a new trial. It is only when the passions of the jury are inflamed by the introduction of extraneous matters, or when unreasonable appeals to their prejudice are made, that a new trial is granted for remarks or argument of counsel[;] the statements must have been fairly calculated improperly to influence the jury, and must have produced substantial wrong or miscarriage of justice, and especially are not ground for a new trial where the verdict is well supported by the evidence." 66 C.J.S. New Trial § 35 at 119-20 (1998).
The Court finds that Plaintiff's allegation of anti-Semitism, specifically defense counsel's use of the phrase 'singing out of the same hymnal' is unfounded and without merit. Further, Plaintiff's bitterness toward the medical, legal and judicial sectors is duly noted. However, Plaintiff's allegations that defense counsel has committed fraud and extortion and has "admitted" same are irresponsible and without merit. Likewise, Plaintiff's accusations of "criminally coercive tactics" and "unlawful . . . behavior" are baseless.
Upon review of the remarks that are the subject of Plaintiff's argument, as well as the probative evidence of record, it is apparent that the comments cited did not result in a "miscarriage of justice" that necessitates a new trial. See United States v. Andrade, 94 F.3d 9,14 (1st Cir. 1996) (quoting United States v.Indelicato, 611 F.2d 376, 386 (1st Cir. 1979)); see also Kelley v.Mutnich, 481 So. 2d 999, 1000 (Fla.Dist.Ct.App. 1986) (rejecting motion to for a new trial where "the effect of the precise words used 
are not of such magnitude in their appeal *Page 9 
to passion, prejudice, sympathy or other emotion"). Indeed, the record consisted of voluminous testimony and other evidence supporting the jury's verdict. As noted above, Defendant testified regarding the standard of care. Defense experts Phillip Dickey, M.D. and Richard Saunders, M.D., testified that Defendant's actions at all times relevant to the instant controversy were within the standard of care and that Defendant's actions did not cause Plaintiff's chronic pain. Also, various medical records were admitted concerning previous medical treatment affecting Plaintiff's level of pain, a crucial issue in this case. Accordingly, the comments made by defense counsel while not probative of anything relevant, were not of a kind to improperly influence the jury's ultimate resolution that Defendant was not negligent in this instance. Such questions did not serve to produce a miscarriage of justice. The jury's verdict was well supported by the evidence and responded to the merits.
Plaintiff also avers that the Court admitted medical records that were irrelevant to the proceedings and that resulted in prejudice to Plaintiff. Plaintiff refers specifically to a number of medical records concerning prior gynecological treatment, as well as psychotherapy.
It is well-established that decisions pertaining to "the admission or exclusion of evidence on the grounds of relevance are left to the sound discretion of the trial justice." Skaling v. Aetna Ins. Co.,742 A.2d at 288 (citing State v. Gabriau, 696 A.2d at 294). The Court's decision should be "soundly and judicially exercised in the light of reason applied to all the facts with a view to the rights of all the parties to the action." Id. (quoting Citrone v. SNJ Assocs., 682 A.2d at 95). Because the decision is left to the discretion of the trial justice, "[r]ulings of the court in the conduct of the trial on matters resting in its discretion are not ground for new trial, unless substantial injustice is shown to have resulted therefrom." 66 C.J.S. New Trial
§ 37 at 123. As such, the admission of particular evidence is a ground for a new trial in situations when the *Page 10 
"evidence erroneously admitted is material and very damaging and it influenced, or may have influenced, the jury in arriving at a verdict." 66 C.J.S. New Trial § 39 at 124-25.
Moreover, the medical records Plaintiff disputes were, in fact, relevant to the central issues at hand. This was a medical malpractice action in which Plaintiff asserted that Defendant's actions caused her physical and emotional anguish. Consequently, it follows that Plaintiff's medical care, both prior to and subsequent to the 1998 discectomy, were pertinent and relevant to the proceeding. The Rules define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" Super. Ct. R. Civ. P. 401; see also Boscia v. Sharples,860 A.2d 674 (R.I. 2004). The Rules also provide that all relevant evidence is admissible except as otherwise provided by law. Super. Ct. R. Civ. P. 402. Accordingly, Defendant was permitted to explore a panoply of issues relative to Plaintiff's physical and mental health, as well as her pain and anguish. Plaintiff's motion for a new trial on the ground that the medical records admitted resulted in prejudice is denied.
Accordingly, this Court "must approve the verdict." Oliveira v.Jacobson, 846 A.2d 822, 826 (R.I. 2004) (citing Skene v. Beland,824 A.2d 489, 493 (R.I. 2003) ( per curium)) (approval of the verdict is a trial justice's only viable option when, "in his or her independent judgment, the evidence is balanced and reasonable minds could differ on the outcome").
 DEFENDANT'S MOTION FOR ASSESSMENT OF COSTS
Additionally, Defendant moves the Court for an assessment of costs pursuant to Super. Ct. R. Civ. P. 54(d) and 54(e). Plaintiff has objected. Defendant has submitted costs associated with constable fees and deposition expenses. *Page 11 
Generally, costs "shall be allowed as of course to the prevailing party as provided by statute and by these rules unless the court otherwise specifically directs." Super. Ct. R. Civ. P. 54(d); seealso G.L. 1956 § 9-22-5 (the prevailing party in a civil action is entitled to recover costs "except where otherwise specially provided, or as justice may require, in the discretion of the court"). With respect to deposition costs particularly, "no costs shall be allowed unless the court finds that the taking of the deposition was reasonably necessary, whether or not the deposition was actually used at trial." Super. Ct. R. Civ. P. 54(e). Our Supreme Court has held that costs are normally considered the expenses of suing another party, including filing fees and fees to serve process. Kottis v. Cerilli, 612 A.2d 661, 669 (R.I. 1992). The payment of expert witness fees is not normally recoverable in an award of costs. Chiaradio v. Falck, 794 A.2d 494, 496 (2002).
It is well-established in this jurisdiction that it is within the discretion of the trial justice to award costs to the prevailing party in a civil action. See, e.g., Bielecki v. Boissel, 715 A.2d 571, 575
(R.I. 1998); Liberty Mut. Ins. Co. v. Tavarez, 797 A.2d 480 (R.I. 2002);Chiaradio v. Falck, 794 A.2d 494 (R.I. 2002). When deciding whether to award costs to the prevailing party, the trial justice may consider how close the case was, the complexity of the case, and the nature of the case. Remington Prods., Inc. v. North Am. Philips Corp.,763 F. Supp. 683, 686-88 (D. Conn. 1991) (affirming trial court's denial of costs based largely on complexity and quality of the case presented by both parties to the proceeding).
The complex circumstances surrounding Plaintiff's case — particularly as related to an arduous history of chronic pain and numerous medical treatments — were described supra. Furthermore, the Court notes that Plaintiff's counsel presented this case in an extremely thorough, elegant and exhaustive manner. The manner in which Plaintiff's case was presented *Page 12 
could hardly have been improved upon. Likewise, defense counsel performed a correspondingly exhaustive effort on Defendant's behalf. However, given the complexity of this case and its torturous history, both pre and post trial, the Court, in its discretion, denies Defendant's Motion for Costs.
 CONCLUSION
After reviewing all of the evidence before it, the Court finds that reasonable minds could have differed with respect to the evidence; that defense counsel's comments did not influence the jury such that a new trial is warranted; and that the medical records admitted concerning Plaintiff's medical treatment prior to 1998 were relevant as they related to Plaintiff's physical and emotional pain. This Court also denies Defendant's motion for costs. Counsel shall submit an appropriate order for entry.
[1] Compl. at ¶ 14, 15 (Aug. 30, 2001). Plaintiff filed suit, on behalf of herself and her two sons, against Defendant, Defendant's practice, and Rhode Island Hospital of which Defendant was an agent. Id.
at ¶ 2-8.
[2] Following the jury verdict, Plaintiff's counsel made a motion to withdraw his representation which was heard and considered by this Court on July 11, 2005. After hearing from both plaintiff's counsel and plaintiff, herself, the motion was granted. Plaintiff's counsel was at all times ready to argue on plaintiff's behalf or assist plaintiff should she desire to argue post trial motions herself. Plaintiff was given ample time within which she could retain counsel to argue such motions or opt to prepare and argue such motions herself.